IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

WESTERN DISTRICT—PITTSBURGH, 1884.

## Hill, Administratrix, *versus* The Nation Trust Company.

1. Where an agent of a banking firm is authorized to certify the checks of drawers with sufficient funds, the fact that he transgresses his authority and certifies checks where the drawer has no funds, will not relieve the bank from responsibility to an innocent holder.

2. In a suit by a bona fide holder of a certified check against the bank, the authority of an assistant teller of the bank to certify checks as "good" may be shown by evidence of a course of dealing as between himself, his principals and the bank customers.
   *Semble*, that such authority could not be shown by evidence of a general custom of banks to authorize such agents to pledge the credit of the bank by certifying checks.

3. A nonsuit should never be granted where there is any evidence sufficient to justify the inference of the disputed facts, on which the right to recover rests. The plaintiff is entitled to the benefit of every inference which might fairly be drawn by the jury from the evidence.

November 6th, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas, No. 2, of *Allegheny county:* Of October and November Term, 1884, No. 180.

Assumpsit, by Joseph Hill against Charles H. Armstrong et al., doing business as the Nation Trust Company, to recover the amount of a certified check, of which the following is a copy:—

12 OUTERBRIDGE—1

[Hill *v.* Trust Co.]

*Good*

T. D. BLAIR, A. teller.          PITTSBURGH, Sept. 1, 1873.

NATION TRUST COMPANY: Pay to Michael O'Hara or order twenty-four hundred and forty dollars ($2440).

[Indorsed]          MICHAEL O'HARA.

MICHAEL O'HARA.

The death of plaintiff having been suggested, Annie D. Hill, his administratrix, was substituted as plaintiff.

On the trial, before KIRKPATRICK, J., the evidence on behalf of the plaintiff was to the following effect: The defendants had been copartners, doing a general banking business under the name of the Nation Trust Company, but had failed some time in the fall of 1873, subsequent to the date of the check in suit. T. D. Blair, who certified the check, had been in their employ three or four years immediately prior to the failure, acting in the double capacity of messenger and assistant teller. Although no action had been taken by the board of directors, prescribing his powers and duties, yet during almost the entire period of his employment, he had exercised, under a general verbal authority from the cashier, the power to certify checks when the drawer had funds in bank. A great number of checks certified by him had all been duly honored by the Nation Trust Company. The check in suit had been indorsed and delivered, so certified, by the drawer to Andrew F. Baum, and by him delivered to the original plaintiff, both of whom were bona fide holders for value without notice of any defect. At the time the check was marked " good " the drawer had no funds in bank, but Blair's recollection was that he had consulted the cashier, and had been directed by him so to mark it. A short time before the failure of the defendants, and before the check had passed out of his hands, Baum had gone to their place of business to get it cashed. It was not paid, but temporary embarrassment was the only reason given for delay. He talked at the time with some of the officers and directors about it, who, having seen the check, said it would be made all right in a short time. Some testimony was given, going to prove a general custom, among the banking institutions of the community, for assistant tellers to exercise the power of certifying checks.

The court, on motion of defendants, granted a nonsuit, which the court in banc subsequently refused to take off. Plaintiff thereupon took this writ, assigning for error the granting of the nonsuit, and the refusal to take off the same.

*Thos. C. Lazear* (*Chas. P. Orr* with him) for plaintiff in error.—The plaintiff was entitled to the benefit of every inference of fact which the jury might have drawn from the

evidence: Maynes *v.* Atwater, 7 Norris 496; Bevan *v.* Ins.
Co., 9 W. & S. 187.

It was competent to prove that the assistant teller had
power to certify the check, either by showing a direct delega-
tion from the authorized officers, or by their subsequent sanc-
tion, or by a course of dealing on the part of defendants, or by
a well-established usage on the subject.

In the absence of knowledge on the part of Baum or the
plaintiff, the lack of funds of the drawer is immaterial:
Farmers' & Mech. Bank *v.* Butchers' & Drovers' Bank, 14
N. Y. 624; Merchants' Bank *v.* State Bank, 10 Wall. 604;
Cooke *v.* State National Bank, 52 N. Y. 96.

*George Shiras, Jr. (S. Schoyer, Jr.,* and *J. B. Herron, Jr.,*
with him), for defendant in error.—All the evidence which
tended to show that the defendants had permitted Blair to
exercise the power of certifying checks in other instances was
irrelevant, because it was not shown that such instances were
known to Baum or to Hill, or that they relied upon, and acted
in view of them, and hence the bank was not estopped by such
evidence.   Even if the cashier did direct the check to be
certified, he had no right to certify a check himself, when the
drawer had no funds, and could not delegate the power to
Blair: Mussey *v.* Eagle Bank, 9 Met. 306; Atlantic Bank *v.*
Merchants' Bank, 10 Gray 551; Pope *v.* Bank of Albion, 57
N. Y. 126.   Moreover, neither Baum nor the plaintiff knew
of such direction, and the company cannot be affected unless
the check was taken on the strength of such direction.

Mr. Justice STERRETT delivered the opinion of the court,
January 5th, 1885.

In our practice, a peremptory nonsuit is in the nature of a
judgment for defendant on demurrer to evidence; and hence,
in testing the validity of such nonsuit, the plaintiff is entitled
to the benefit of every inference of fact which might have been
fairly drawn by the jury from the evidence before them:
Maynes *v.* Atwater, 7 Norris, 496.   It is immaterial that the
evidence in support of a plaintiff's claim may be very slight,
provided it amounts to more than a mere *scintilla.*   If there
is any evidence which alone would justify an inference of the
disputed facts on which his right to recover depends, it must,
according to the well-settled rule, be submitted to the jury.
It is their exclusive province to pass upon the credibility of
witnesses, weigh the evidence and ascertain the facts: Express.
Co. *v.* Wile, 14 P. F. S. 201.

The defendants, on whom the check in suit was drawn, were
an unincorporated association doing a general banking busi-

ness in the name of the "Nation Trust Company." Their copartnership relation in that business is not controverted.

The check, drawn by Michael O'Hara to his own order, after being indorsed and delivered by him to Andrew J. Baum, was presented by the latter at the counter of the company's bank; but, instead of being paid, it was marked "Good, T. D. Blair, A. teller," and returned to Baum, who shortly afterwards passed it by delivery to plaintiff. The presumptive title of plaintiff, as *bona fide* holder of the certified check, was fortified by testimony tending to prove, not only that Baum was a holder for value without notice of any defect, but that plaintiff was likewise an innocent purchaser for value. Under these circumstances, nothing more was required, to make out a *prima facie* case for plaintiff, than to show an acceptance or certification of the check, on behalf of defendants, by an agent in their employ, authorized to bind them by that form of contract. It was not necessary to show that the agent's authority to certify checks embraced cases in which the drawer had no funds. If his authority, as between himself and his principals, was in fact restricted to cases in which the drawer had sufficient funds, and he, either intentionally or by mistake, transcended that authority by marking the check "Good" when the drawer thereof had no funds, the consequences of his infidelity or blunder should be visited, not upon the innocent holder of the check so certified, but upon the agent's employers who put it in his power to commit the wrong.

It was conceded that Blair, by whom the check was marked "Good," was then an employee of the company defendant; and, for the purpose of showing that he was authorized to do what he did, plaintiff introduced testimony tending to prove that he was then and for a considerable time before had been employed by the company as assistant teller; that he so acted in that capacity as to justify the inference that he was either directly authorized to certify checks, or that he did so with the knowledge and tacit consent of his employers. Blair himself testified he was in the employ of the company as assistant teller, and in that capacity certified the check in suit, not only under a general authority from the cashier to do so, but his impression was that the cashier specially directed him to certify the check in question. As to the fact of general authority to certify checks, and that his acts in so doing were knowingly acquiesced in and ratified by the company, he was corroborated by an officer of the German National Bank, who testified in substance that from 1869 to 1873, he saw quite a number of such checks bearing the certificate of Blair, as assistant teller; that the certified checks came into the pos-

session of his bank through the clearing house, and were duly honored by the Nation Trust Company.  In addition to this, Baum testified that when the check was presented for payment he exhibited it not only to the officers of the bank but also to some of the directors who were present; that instead of objecting to the certification as unauthorized, they merely explained why it was not convenient for them to pay the check at that time.

The testimony thus briefly noticed was quite sufficient to carry the case to the jury on the question of Blair's authority, as assistant teller, to certify checks, and thus render defendants liable to bona fide holders thereof for value.  If the case had been submitted, under proper instructions, the jury might have found in favor of plaintiff.  The testimony, if believed, would have warranted them in so doing.  Assuming it to be true, as testified by the teller of the German National Bank, that checks, bearing Blair's certification, frequently passed through the clearing house and were duly honored by defendants, it is highly improbable they were ignorant of the facts.  If they knew he assumed to represent them in that manner and tacitly acquiesced therein, they are not in a position to repudiate his acts as unauthorized.  If, by a course of dealing which they knowingly permitted, they have rendered themselves liable to bona fide holders of checks certified by one of their employees, what reason have they to complain? These and other inquiries, naturally suggested by the evidence, were clearly proper for the consideration of the jury ; and, hence, we think there was error in directing a nonsuit.

The attempt to prove custom, as an independent foundation for Blair's authority to certify the check in question, was not successful.  The testimony failed to show any such general and uniform usage on the subject as would justify the inference that authority to certify checks is a generally recognized incident of the office of teller or assistant teller.  It is, morever, a grave question, whether such an usage is not essentially bad, for the reason that it is in effect a power to pledge the credit of the bank to its customers.  But, the question does not necessarily arise in this case, and hence we forbear expressing any opinion as to its merits.

Judgment reversed and a procedendo awarded.