# McGrann *versus* The Pittsburgh and Lake Erie Railroad Company.

1. Upon a motion for a nonsuit the truth of the plaintiff's testimony and such inferences of fact as a jury may lawfully draw from the facts testified to must be conceded.

2. Where the testimony is direct, positive, clear and precise that a receipt in full of all demands was procured by means of falsehood asserted as truth by the party procuring the receipt, a question of fraud in fact is raised against the validity of the receipt which it is the function of the jury, and not of the court, to determine.

3. Where the face of a receipt shows merely that the plaintiff recovered only what he was entitled to recover, the effect of the impeaching fact of fraud in procuring the receipt cannot be taken away by the theory that the plaintiff must first restore something that was not given him by the terms of the receipt before he can maintain an action.

4. It is competent for a party giving a receipt in full to testify that he was induced to give said receipt by the belief of a falsehood actually asserted as true by the party to whom the receipt was given, and that by reason of his belief that the falsehood was true it was his judgment that he could not recover any other claims he might have against said party. He may not, however, testify that this judgment was based upon professional advice given upon the subject.

5. The state of the party's finances at the time he gave the receipt in full is not material as to the question of imposition or fraud practiced upon him in procuring the receipt.

November 3d, 1885.    Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas No. 2, of *Allegheny county:*   Of October and November Term, 1885, No. 130.

This was an action of debt brought 25th September, 1883, by B. J. McGrann against the Pittsburgh and Lake Erie Railroad Company to recover for extra work done and materials furnished in the construction of the defendant's railroad.

On the trial before EWING, P. J., the following facts appeared from the testimony of the plaintiff.

The defendant was incorporated to construct a railroad from Birmingham Pa., to Hazleton, Ohio, a distance of about sixty-eight miles.

After some negotiations between the parties a contract was finally entered into between them on the 26th of September, 1877.

The duties of the respective parties under the contract were, in brief, as follows:

. The plaintiff was to make the necessary surveys and fix the location. He was, to that end, to furnish engineering service for such survey and location, and for the construction of the road, as well as for the preparation of necessary maps, profiles and plans. His engineers were to stake out and indicate the work to be done, and instruct sub-contractors, laborers and workmen as to the means for its accomplishment.

The defendant was to appoint a chief engineer to examine the plaintiff's maps, profiles and plans, and it was his duty to approve them when in accordance with the specifications. It was his duty also, to inspect and examine the work during its progress, and to approve the same when it conformed to the contract requirements. When the plaintiff selected a route which agreed with that prescribed by the agreement, in the named particulars of grade and curvature, it thereupon became the duty of the defendant to furnish him rights of way, so that the building of the railroad thereon might be promptly proceeded with.

Further the defendant agreed to pay the plaintiff the sum of $2,500,000, $1,115,000 in cash, $1,115,000 in bonds of the company and $200,000 in stock of the company. Fifteen per cent. of the amount found due by monthly estimates by the defendant's engineer was to be retained until the final completion of the work. The contract further provided: " And upon the final completion of the work, at the request of the party of the first part, the said chief engineer shall examine all the work done, and if he finds the same completed in accordance with this contract and specifications, he shall so certify to the parties hereto, and thereupon the full amount of ($2,500,000) two million five hundred thousand dollars, less such former payments as may have been made on this account, shall be due and payable to the party of the first part by the party of the second part, and shall be so paid upon his giving a release from all further claims arising out of this contract."

The plaintiff produced testimony to show that he was not permitted to build the road in accordance with the terms of the contract between him and the defendants. That the defendants to avoid paying large land damages changed the location of the road from that fixed by him, the plaintiff

[McGrann *v.* Pittsburgh and Lake Erie R..R. Co.]

claimed that the additional cost to him resulting from this change was $131,593.30.   The plaintiff claimed that the additional cost to him from a change of location of the bridge across the Ohio river after he had the bridge in the place fixed by himself under the contract partly manufactured was about $30,000.   The change of the kind of masonry from that specified by the contract was the plaintiff claimed another great additional cost.   The expense of maintaining these portions of the road after completion and which were used by the defendants from the time of completion until the whole road was completed and of repairing them when destroyed by floods and extraordinary storms aggregated some $75.000.

The plaintiff presented an itemized statement of his claim under each of the following extras:

1. Extra work resulting from changes between Jones & Laughlin's and Chartiers.

2. Work done on original location from Chartiers to Neville Island, (line graded and then abandoned by company's direction.)

3. Borrow pit at Lashell, extra cost of work.

4. Extra work, Stoup's Ferry to Shousetown.

5. Work on abandoned location through Telford's.

6. Work done on abandoned culvert.

7. Changes in character of masonry in structures at stone culverts when extended.

8. Extra cost for erection of Ohio R. R. bridge and viaduct, resulting from change at Beaver side.

9. Beaver road crossing—overhead substituted for grade.

10. Material hauled away from Sharon and Fallston road to grade street.

11. Fallston road bridge, overhead substituted for grade crossing.

12. Change at Fort Wayne crossing at Beaver Falls.

13. Extra work at Clinton, grading and masonry, outside line, resulting from change of line.

14. Wampum bridge changed to double track.

15. Bridge at Robinson & McClelland's, rendered necessary by arbitrary location.

16. Extra work at Lowell from change to double track.

17. Maintenance and repair of railroad from Beaver Falls to Hazelton from September 15th, when company took possession, to December 15th, three months, at $10,000.

18. Maintenance and repair of railroad from Chartiers Creek to Beaver Falls from November 1st, date when company took possession, till February, 1879, three months, at $15,000.

19. Excess of value of work on account of changes in character of masonry.

20. Change from iron to steel in track, lock-nuts, sidings and spring frogs.

The whole amount of extras claimed for was $453,372.23.

In January, 1879, the road having been, in the judgment of the engineers, completed, a final tour of inspection was made. Mr. Wimmer, the company's chief engineer, accompanied by his assistant, Mr. Ackenheil; Mr. McGrann, the contractor, with his chief engineer, Mr. Saylor, made a trip over the entire road. Returning to Rochester on January 31st, the chief engineer expressed himself as satisfied with the road. Thereupon he told the contractor that he might discharge his force.

Wimmer, the chief engineer of the company, gave the plaintiff the following certificate:

OFFICE OF THE CHIEF ENGINEER P. & L. E. R. R. ⎱
PITTSBURGH, February 5th, 1879. ⎰

After due and careful examination of the Pittsburgh & Lake Erie railroad, on notice of the contractor, B. J. McGrann, of its completion, I hereby certify that said Pittsburgh & Lake Erie railroad is completed in accordance with the terms of the contract and specifications, and that the same is now ready for the ordinary freight and passenger traffic of the standard railroads, with the reserve, however, that seventy thousand dollars' worth of work is yet to be done in order to cover all points of the contract and specifications, to be subtracted from the bills of extra work claimed by the contractor and submitted to me.                    SEBASTIAN WIMMER.

To B. J. McGrann, Contractor of P. & L. E. R. R.

On the next day the plaintiff presented his claim to the board of directors of the defendant company. They refused anything for extras. He thereupon stated that his claim for extras was only that which had already been examined and approved by the engineers, that he asked for nothing more.

To this the reply was made, "*the report of the engineer is that you are not entitled to any extra work.*" When he asserted the contrary, and that he had the engineer's certificate, the reply was made: "*Oh! but he has been here* SINCE *and reported that you are not entitled to any extra work.*" They also informed him that if he did not like the contract price he might retain the road, and he would be held responsible for anything that might happen it. He replied he was compelled to take it. He accordingly took it, and gave the following receipt:

"Received, Pittsburgh, Pa., February 6th, 1879, of the

[McGrann v. Pittsburgh and Lake Erie R. R. Co.]

Pittsburgh & Lake Erie Railroad Company, one hundred and eighty-three thousand one hundred and ninety and 56-100 dollars ($183,190.56) being as follows: one hundred thousand dollars in the capital stock of the company, fifty thousand dollars in mortgage bonds of the company and thirty-three thousand one hundred and ninety and 56-100 dollars in cash, being in full of all claims and demands of any and every kind whatever by me on account of the construction of railroad for said railroad company, and I hereby deliver up possession, custody and control of said railroad to the said railroad company. And said railroad company by its president hereby accepts said railroad as completed in accordance with said contract."          (Signed)          B. J. McGRANN.

Attest: J. H. McCREERY.

(Signed)

PITTSBURGH & LAKE ERIE RAILROAD COMPANY,
By JAS. I. BENNETT, *President.*

The plaintiff testified that he was induced to take the contract price, and give the foregoing receipt by the belief that what the directors stated to him, as the statement of the chief engineer, was true. That this statement was untrue was testified to by several witnesses.

Charles Davis, an engineer of the defendant, being on the stand, plaintiff's counsel propose to ask the witness this question: "Whether or not the masonry work done by the plaintiff on defendant company's road was of a character substantially the same as that provided for in the contract which plaintiff refused to enter into at or about the time that this contract was made, for the reason, among others, that he was unwilling to undertake such masonry at the price named?"

Objected to as irrelevant. Objection sustained and bill sealed for plaintiff. (First assignment of error.)

Francis H. Saylor, an engineer of the plaintiff, being on the stand, was asked: You may state whether or not the masonry, as actually constructed by the contractor, was substantially of the same character as that described in Mr. Davis' proposed contract.

Objected to as irrelevant and incompetent. Objection sustained and bill sealed for plaintiff. (Second assignment of error.)

Plaintiff's counsel offer to show that on the 28th of January, 1879, prior to the final inspection of the road on the 31st of January, by the chief engineer, the chief engineer of the contractor, met the principal assistant engineer of the company who had been detailed by the chief engineer for that purpose, to endeavor to agree with him as to the proper

[McGrann *v.* Pittsburgh and Lake Erie R. R. Co.]

amount, and proper cost of extra work done in the execution of the contract, that certain figures were agreed upon between these parties at that time, and what those figures were; that they were subsequently submitted to the chief engineer, and that subsequent to that time the chief engineer gave to the contractor a certificate, in which he recognized the bill of extra work claimed by the contractor and submitted to him—to be followed by the certificate of the engineer referred to.

The purpose is to show a liability on the part of the company for extra work, and the amount of that liability. Objected to as incompetent and irrelevant. Objection sustained and bill sealed. (Third assignment of error.)

Plaintiff's counsel offer to show that the contractor called upon the chief engineer of the company for an estimate on account of his extra work, and that the chief engineer then, for the purpose of preparing such an estimate, brought about a meeting between his subordinate, his principal assistant engineer, whom he detailed for the purpose, and the chief engineer of the contractor, in order to arrive at the items of the contractor's claim for extras; that such meeting was had; that the items were arrived at, and to show what those items were; to be followed by evidence that they were submitted to the chief engineer.

Conversation between the witness and engineer objected to. Objection sustained and bill sealed for the plaintiff. (Fourth assignment of error.)

Counsel for plaintiff proposes to show by the witness on the stand:

" That previous to the meeting, as to which the witness has testified [meeting for settlement] and covering the whole period of his work under the contract, the course of the chief engineer in making and furnishing estimates to the contractor had been influenced (to the delay and damage of the contractor) by certain of the board of directors for their own purposes.

" That at the time of the settlement, the contractor was largely indebted to Dr. Hostetter, one of the board, for money advanced to the contractor to enable him to carry on his work, at a time when his monthly payments had been delayed.

" That the contractor was without means, save as they should be derived from a settlement with the company, to relieve himself of this and of other then pressing indebtedness.

" That relying on the authority of the chief engineer, given January 31st, 1879, he had dismissed his entire force, and was unable to care for said road.

" That he had during the progress of the work under the

contract, consulted James E. Gowan, Esq., a member of the bar of Philadelphia, and received from him the advice that under the contract, he was absolutely in the hands of the engineer, and bound by his decision on any and every matter in connection with, or arising out of the work undertaken by him, the said contractor. That when the board of directors announced to him that the chief engineer had decided that he was not entitled to any extras, he believed them, and believed that the chief engineer had again made himself subservient to the board, and notwithstanding his certificate of the day before, decided against him (the contractor), and he also believed that such decision deprived him of any legal ground to recover his extras. That he was induced to sign a receipt in full, receiving only what was actually due him under the contract, by the representation made to him as to the engineer's decision, which representation was untrue, entertaining the aforesaid belief as to the legal effect of such decision, coupled with the threat of the board, that if he did not sign such receipt, he might keep the road, and be responsible for its maintenance—and this made at a time when it was out of his power to keep said road—and when he was in actual and pressing need of money."

" To show the combination of circumstances under which the contractor settled with the defendant, and what induced him to do so ; and to show such fraud, misrepresentation and duress as invalidates in law the settlement referred to."

Counsel for the defendant object to this offer as a whole. The offer as a whole objected to as irrelevant and incompetent, the several portions were also specifically objected to. Objection sustained and bill sealed for the plaintiff. (Fifth assignment of error.)

Counsel for plaintiff proposed to show by the witness on the stand :

That previous to the time of a settlement with the defendant company, he had been advised by James E. Gowan, Esq., a member of the bar of Philadelphia, that the chief engineer of defendant company's decision as to any matter connected with the work was binding and conclusive on him.

That he believed, on the day of meeting with the board and when a settlement was made, that if the engineer had decided that he was not entitled to extras, he could not maintain any action therefor; that he believed from the representation of the board of directors that the chief engineer had decided against him ; that this representation was untrue ; that if he had not believed it to be true, and that the engineer's decision bound him, he would not have signed any settlement short of getting his extras.

1 AMERMAN—12

[McGrann *v.* Pittsburgh and Lake Erie R. R. Co.]

For the purpose of showing such mistake and fraud as relieves the plaintiff from the effect of any settlement made.

Objected to as incompetent and irrelevant. Objection sustained, and bill sealed for plaintiff. (Sixth assignment of error.)

The plaintiff being on the stand as a witness, and under examination with respect to the receipt given by him to the defendant company, plaintiff's counsel now propose to ask the witness what induced him to sign the receipt.

Objected to because that it is to be gathered from the facts and circumstances as they happened at the time, and not from what the witness now states to have been his private motive in signing the receipt, and as irrelevant and incompetent. Objection sustained, and bill sealed for plaintiff. (Seventh assignment of error.)

Defendant's counsel move to strike out, first, all the evidence under offer of financial embarrassment, on the ground that the proof as made did not come up to the offer as made in this, among other things, that plaintiff's counsel did not bring home knowledge to the board of witness' embarrassed condition at the time of the settlement; and second, under the offer the plaintiff was permitted to ask the witness question as follows:

Q. You can state whether or not this need of money on your part and inability to care for the road, and threat by the board, had any influence on you as to signing the receipt?

A. It had.

Motion granted and the evidence stricken out, and bill sealed for plaintiff. (Eighth assignment of error.)

Defendant's counsel move the court to strike out that portion of the plaintiff's testimony under the following offer made:

Counsel for plaintiff propose to show by the witness on the stand that he believed, when he signed the receipt of February 6th, 1879, the law to be that if the defendant company's engineers had decided that he was not entitled to compensation for extra work, he (the contractor) could not recover therefor; that this belief influenced him in signing said receipt, for the purpose of showing the receipt was signed in an honest mistake as to the legal rights of the plaintiff. And the testimony in answer to the following question: "Just answer this question alone: You may state whether or not, at the time this receipt was signed, you believed the decision of the chief engineer as to extras to be binding on you."

And the testimony in answer to the following question: "You may state whether or not that belief influenced you in signing the receipt?"

Motion granted, and the evidence stricken out, and bill sealed for the plaintiff.    (Ninth assignment of error.)

The court, on motion of defendant's counsel for compulsory nonsuit, entered the following judgment:

The motion for peremptory nonsuit is granted, and judgment of nonsuit is hereby entered with leave to the plaintiff to move the court in banc to take off the same.    (Tenth assignment of error.)

The court filed the following opinion on the motion to take off the compulsory nonsuit:

The contract under which the plaintiff built the Pittsburgh and Lake Erie Railroad was to build and deliver the road as a whole, finished in accordance with the specifications.

The chief engineer of the defendant company was made sole arbiter as to when it had been so finished.  The contract in itself does not appear to contemplate any extras or anything to be done by the contractor outside of the specifications.  It gave the chief engineer no power to order extras, nor to pass on the value thereof, should any be ordered by the company.

The plaintiff could not recover his final payment on his contract without producing the certificate of the chief engineer that the entire work had been completed in accordance with the contract, or showing something that would be the legal equivalent therefor.

The exigencies of the plaintiff's case compelled him to give in evidence the settlement of the 6th of February, 1879, as also the peculiar certificate of the chief engineer, of February 5th, 1879.

The plaintiff avers that that settlement was obtained from him by fraud on part of the board of directors of the company in this, to wit: that the president of the board asserted that the chief engineer had decided that he, McGrann, was not entitled to anything for extras, and that he, believing the assertion, made the compromise and settlement in question.

As we have already said, the chief engineer had no power to decide that question as arbiter.  The evidence shows that the board declared to McGrann, who was asserting that the chief engineer had decided that he was entitled to extras, that he had no power to decide the question.

The chief engineer was an important witness in case of a contest, but nothing more.

Mr. McGrann had in his possession the written certificate of February 5th, virtually asserting that he, McGrann, was entitled to at least $70,000 for extras, a paper which would have been a pretty conclusive answer to the assertion as to his alleged after decision.

Mr. McGrann's office was in the same building and close to

that of the chief engineer, and both were in the building in which the settlement was made. The testimony shows that on the same evening Mr. McGrann met the chief engineer. They appear to have been on intimate terms.

The suit was not brought until nearly six years had elapsed since the settlement. When and where, and how the plaintiff learned of the imposition which he alleged was practiced upon him, does not appear. How he could and should have learned of it with reasonable diligence, is easily seen.

At the meeting for settlement, the plaintiff not only had not the certificate of the chief engineer that the road was completed according to contract, but his certificate declared (and decided) that there remained $70,000 worth of work to be done to complete the road according to contract.

The defendant company was not bound to take the road off the contractor's hands until this work was completed, nor was he until that time entitled to his pay.

In making the settlement he received large and valuable concessions from the company. He was relieved of the responsibility of keeping up the road and from the cost of finishing it, and he received a large amount in money, in bonds and in the stock of the company. No offer has been made to restore these, or to put the company in the position it was at the time of settlement.

At the close of plaintiff's testimony we were of the opinion that the evidence did not warrant the court in submitting the case to the jury. Further consideration has not changed our conclusion.

And now, July 1st, 1885, upon consideration the court in banc refuses to take off the compulsory nonsuit heretofore entered. (Eleventh assignment of error.)

Thereupon the plaintiff took this writ, filing the foregoing assignments of error.

*S. H. Reynolds* and *John Dalzell* (*F. M. Magee* with them), for the plaintiff in error.—Upon a motion for nonsuit the rule is, that the plaintiff is entitled to the benefit of every inference of fact which the jury might draw from the evidence, the defendant being considered as admitting every fact which the evidence tends to prove: Maynes *v.* Atwater, 7 Nor., 497 ; Bevan *v.* Ins. Co., 9 W. & S., 187 ; Smyth *v.* Craig, 3 W. & S., 18 ; Miller *v.* Bealer & Wife, 4 Out., 583.

The court erred in its construction of the engineer's certificate. The rule is, where the parties (there being no fraud or concealment, or mistake, or ignorance of facts) have themselves put a construction on the terms of the contract, such construction must control, as in the nature of an estoppel:

Citizens Fire Ins. Co. v. Doll, 35 Md., 89; Farley v. Pettes, 5 Mo. App., 262; Reading v. Gray, 37 N. Y. Superior Court Reports, 79; Lehigh Coal & Navigation Co. v. Harlan, 3 Casey, 439.

The court should not have construed the certificate. Where the question is not the interpretation of a writing, but its effect as evidence of a collateral fact, it is to be submitted to the jury. An admixture of parol and written evidence carries the whole to the jury: Wharf v. Howell and Wife, 5 Bin., 502; Stoever v. Stoever, 9 S. & R., 434; McCullough v. Wainright, 2 H., 173; McKean v. Wagenblast, 2 Grant, 463; Reynolds v. Richards, 2 H., 205.

Under all the evidence the court below erred: In holding that the receipt given by the plaintiff was a bar to his action, and this because it had been procured from him by fraud, such as to render it entirely void.

(a) "A receipt in full is *prima facie*, but not conclusive, evidence of a settlement. It may be attacked on the ground of fraud, mistake or ignorance of his legal rights by the party who gave it:" Hamsher v. Kline, 7 P. F. S., 403; Russell v. Presby. Ch., 15 P. F. S., 9; Skaife v. Jackson, 3 B. & C., 421; Gross v. Leber, 11 Wr., 524. It did not amount to an accord and satisfaction: Pulliam v. Taylor, 50 Miss., 257; Hearn v. Kiehl, 2 Wr., 149.

But even if an accord and satisfaction, still it will be set aside if brought about by misrepresentation and concealment of material facts by one of the parties. It stands on the same footing as any other contract: Hoge v. Hoge, 1 Watts, 163; Gordon v. Gordon, 3 Swans, 400; Sturge v. Sturge, 12 Beav., 244. In general, parties to a compromise, must deal with each other on an equal footing: Barnawell v. Threadgill, 3 Jones' Eq., 50; Leonard v. Leonard, supra; Benson v. Bennett, 1 Camp., 394, note; Dodd v. Mayson, 39 Ga., 605. And whether the misrepresentation was material, is a question for the jury: Bigelow on Fraud, 7; McAleer v. Horsey, 35 Md., 439; 2 Parson's Contracts, 769.

Every contracting party, not in actual fault, has a right to rely upon the express statement of an existing fact, the truth of which is known to the contracting party who made it, and unknown to the party to whom it is made, when such statement is the basis of a mutual agreement. He is under no obligation to investigate and verify the statement, to the truth of which the other party to the contract, with full means of knowledge, has deliberately pledged his faith: Mead v. Bunn, 32 N. Y., 275; McClellan v. Scott, 24 Wis., 81–87; Upshaw v. Debow, 7 Bush, 442; Walsh v. Hall, 66 N. C., 233; Hale v. Philbrick, 42 Iowa, 81; Oswald v. Gehee, 28 Miss., 340;

Spalding *v.* Hedges, 2 Barr, 240; Starkweather *v.* Benjamin, 32 Mich., 305; Babcock *v.* Case, 11 P. F. S., 430. There was evidence of duress sufficient to avoid the receipt that should have been submitted to the jury: White *v.* Heylman, 10 Cas., 142; Miller *v.* Miller, 18 P. F. S., 486; Motz *v.* Mitchell, 10 Norris, 117; Ellis *v.* Barker, 25 L. T. Rep., 7; U. S. *v.* Huckabee, 16 Wall, 414. The law is clear that a contract made only for the purpose of obtaining goods wrongfully retained may be avoided: Sasportas *v.* Jennings, 1 Bay, 470; Collins *v.* Westbury, 2 Bay, 211; Irving *v.* Wilson, 4 D. & E., 485; Oates *v.* Hudson, 6 Exch., 346. There is evidence of fraud in the lack of a fair consideration for the compromise, so called: Roche *v.* Morgell, 2 Sch. & Lef., 720; Underwood *v.* Brockman, 4 Dana, 309; Stewart *v.* Ahrenfeldt, 4 Denio, 189; Baker *v.* Spencer, 47 N. Y., 562; Warren *v.* Skinner, 20 Conn., 559; Jackson *v.* Summerville, 1 H., 359.

No tender was necessary by the plaintiff to recover in this case. He took nothing by the compromise but what is admitted to be due him outside the compromise.

It was competent for the plaintiff to testify in the belief of the representations made to him which he alleges induced him to sign the receipt: Thorn *v.* Helmer, 2 Keyes, 27; Seymour *v.* Wilson, 14 N. Y., 567.

*D. T. Watson,* —— *Reed (Knox* with them), for defendant in error.—The plaintiff sold and delivered his claim for extras to the defendant. He had no title upon which to recover: Beetem *v.* Burkholder, 69 Pa. St. R., 254; Duncan *v.* Lawrence, 12 Harris, 157. Before the plaintiff could maintain his suit he must repay to the defendant the price paid him for his claim for extra work: Morrow *v.* Rees, 19 P. F. S., 373; Pearsoll *v.* Chapin, 8 Wr., 10; Negley *v.* Lindsay, 67 Pa. St. R., 228; Beetem *v.* Burkholder, *supra;* Gould *v.* Cayuga Co. Nat. Bank, 86 N. Y., 75. This case contains quite an elaborate discussion of the doctrine of rescission. The same doctrine is held in Jarrett *v.* Morton, 44 Mo., 277, and in Van Trott *v.* Wiese, 36 Wis., 448; Jewett *v.* Petit, 4 Mich., 508; Foss *v.* Hildreth, 10 Allen, 80; Lyon *v.* Waldo, 36 Mich., 345. The evidence of fraud was not sufficient to submit to the jury.

This court said in Pennsylvania R. R. Co. *v.* Shay, 82 Pa. St., 198: "It has been more than once held that it is error to submit a question of fraud to the jury upon slight parol evidence to overturn a written instrument. The evidence of fraud must be clear, precise and indubitable, otherwise it shall be withdrawn from the jury. . . . . . Since parties are allowed to testify on their own behalf, it has become still more necessary that this important rule should be strictly adhered to and

enforced: " Stine v. Sherk, 1 W. & S., 195; Dean v. Fuller, 4 Wr., 474; Irwin v. Shoemaker, 8 W. & S., 75; Miller v. Smith, 9 Casey, 386; Clark v. Everhart, 63 Pa. St., 349; Spencer v. Colt, 8 Norris, 314; Juniata Building Asso. v. Hetzel, 7 Out., 508; Phillips v. Meily, 15 W. N. C., 225.

The misrepresentation which will avoid a contract must be the proximate and immediate cause of its being made. It must be the very ground of the transaction: Kerr on Frauds, 73, 74; Cooley on Torts, 469; Fulton v. Hood, 10 C., 371; Smith v. Richards, 13 Peters, 26; Grymes v. Sanders, 3 Otto, 55; Juniata Building Asso. v. Hetzel, 7 Out., 508. There was no evidence of duress: Jordan v. Elliott, 12 W. N. C., 59; Heysham v. Dettre, 8 Norris, 507; Custer v. Bank, 9 Barr, 27. It was incompetent to allow the plaintiff to testify what his belief and motive was; and what the inducing causes were on February 6th, 1879, when he gave the receipt: Spencer v. Colt, 8 Norris, 320; Building Asso. v. Hetzel, 7 Out., 508.

Mr. Justice GREEN delivered the opinion of the court January 18th, 1886.

The controlling question of this case is the correctness of the order granting a compulsory nonsuit. Such an order necessarily concedes the truth of the plaintiff's testimony and such inferences of fact as a jury may lawfully draw from facts proved: Maynes v. Atwater, 7 Norris, 497; Miller v. Bealer, 4 Out., 583. The plaintiff having proved his contract and the work done by him, was confronted with a receipt in full of all demands of every kind for or on account of the construction of the railroad which was the subject of the contract. This receipt was given in evidence in the course of the plaintiff's testimony, and contained in addition to the receipt for the money and securities which were paid to the plaintiff, a delivery and surrender of the road to the defendant, and an acceptance by the latter, of the railroad as completed in accordance with the contract. To avoid the effect of this receipt, which was signed by both parties, the plaintiff alleged and testified that it was procured from him by means of a falsehood, asserted as a truth, by one or more members of the board of directors of the company, at a meeting between him and them when the plaintiff's claim was settled and the receipt given. The plaintiff testified that he believed the fact asserted to be true, and on the faith of it executed the receipt in question by which he abandoned his claim for extra work, which was the chief contention between the parties, and constitutes the subject of the present action. The plaintiff's testimony on this subject was direct, positive, clear, precise, and as it was not contradicted must be regarded as indubitable.

There was corroborating testimony by one witness as to the assertion by the board of directors of the fact alleged to be false, and as the defendant's testimony was not heard, there was no evidence contradicting the testimony of the plaintiff, and his corroborating witness on this subject.  As a question of fraud in fact was thus raised, against the validity of the receipt in question, it would apparently be within the function of the jury and not of the court to determine it.   Unless, therefore, there are sufficient reasons justifying the court in taking the case from the jury, there was error in granting the nonsuit.  It cannot be said that there was no evidence, or only a scintilla of evidence of fraud since the testimony as above stated was direct, positive, clear, precise and indubitable as to the fact of the utterance.   As to its falsity the testimony is quite clear by independent witnesses, at least three, and no testimony in contradiction.   As to its materiality the plaintiff testifies he signed the receipt because he believed the false assertion to be true.   So far as this aspect of the case is concerned the contention in support of the nonsuit does not dispute the fact of the alleged false assertion, nor aver its truthfulness.  It proceeds upon other grounds.  One of them, much pressed, is that the plaintiff must restore, or offer to restore to the defendant all that he obtained by the settlement before he can maintain his action.   We think it unnecessary to review the authorities cited on either side of this question.   In point of fact the plaintiff received precisely what he was entitled to under the contract regarding the road, either as actually completed or as being accepted as completed.   This is all that is specified in the receipt.   Nothing is there said about any unfinished work yet to be done which was thereby released, nor about relieving the plaintiff from any duty of maintaining the road.  Whatever of evidence there may be upon those subjects is in parol, is outside of the receipt, and is properly for the determination of the jury upon a consideration of all the facts which can or may affect their decision.   We do not think it was competent for the court to absolutely assume as matter incontestably proved either that there was $70,000 worth of work yet to be done by the plaintiff in order to complete his contract, or that he was under a fixed and positive obligation to maintain the road for a further time, and that he was released from his obligations in these respects by the receipt in question.   The receipt is silent on these subjects. Possibly they may have an important effect upon the plaintiff's right of recovery.   We express no opinion either way.   But before any effect can be assigned to them the facts affecting them must be found by the jury under proper instructions. As the face of the receipt proves merely that the plaintiff

[McGrann *v.* Pittsburgh and Lake Erie R. R. Co.]

received only what he was entitled to under the contract which was treated as completed by both parties, the effect of the impeaching fact of fraud cannot be taken away by the theory that the plaintiff must first restore something which was not given him by the terms of the receipt, and which possibly may, or possibly may not, have been given him by force of facts occurring outside of the receipt.

It is also urged in support of the nonsuit that the plaintiff could not have been deceived by the alleged false assertion, because he knew, or had the means of knowing its falsehood at the time it was made. It is true he did have in his pocket the engineer's certificate that he was entitled to compensation for extra work. But the assertion of the directors was that *after* that certificate was given, the engineer had declared to the directors that he was *not* entitled to any extras. It was also urged that he could easily have verified the truth of the assertion by applying to the engineer in person. It is certainly somewhat singular that he did not do so before acting finally in a matter of so much importance. But it is most manifest that this consideration is matter for the jury and not for the court. It is a fact affecting the good faith of his action, but clearly it is not the basis for a positive conclusion of law against him. So also the delay of more than four years in bringing the suit is a grave circumstance which ought to be explained, but it surely is not a bar to the suit, and its proper effect upon the integrity of the action is entirely for the jury.

It was also argued that there was no power in the engineer to allow compensation for extras, and therefore there could be no recovery upon such allowance. Of course it may be that the mere allowance by the engineer for extra work does not confer a cause of action where the contract of the parties does not clothe the engineer with authority to make such allowance. But how can the absence of such authority in the original contract deprive the contractor of a right to compensation for such extra work, if in point of fact such work was done either by the express or implied authority of the company subsequently given?

It is alleged by the plaintiff that some or all of his extra work was done by virtue of such subsequent authority, and evidence was given on that subject. That evidence may or may not be sufficient to support the claim, but the determination of its sufficiency is for the jury and not for the court. Had there been no evidence or only a scintilla on this subject, it would have been for the court to pronounce upon it, but the testimony was much more than a scintilla, at least as to some parts of the claim, and therefore was within the province of

the jury.   As the case must be tried again it would not be proper for us to select portions of the testimony and comment upon them in this or any other connection, and we therefore abstain from doing so.   There is certainly great force in many of the matters presented against the plaintiff's claim, but we think they are all of a character to be determined by the jury, some of them under special instructions from the court.

Among other things it was strongly urged by defendant's counsel that the plaintiff must have known that the engineer had no right to allow extras, and therefore he could not have been deceived by the assertion that the engineer had told the directors that the plaintiff was not entitled to any.   Several very forcible points are presented derived from various matters in evidence to prove this proposition.   But it is too plain for argument, that the proposition itself is one of fact and not of law, and that the reasons urged in support of it are based upon matters of fact.   Those may be very persuasive with the jury who are the proper persons to decide them, but they have no place in an argument to the court.   Upon the whole case we think the court was not justified in entering the nonsuit, and for that reason the case must be reversed.

There are several assignments which relate to questions of evidence.   The first, second and fourth we think are without merit. . The third is not pressed.   We think the matters contained in the fifth clause of the fifth assignment, except that which relates to the professional advice received from Mr. Gowan to the effect that the plaintiff was bound by the decision of the engineer, were competent and should have been received, and to that extent this assignment is sustained.   The other matters covered by this assignment were properly rejected.

The same ruling sustains the sixth assignment, and requires the evidence there offered, other than that which relates to the professional advice, to be admitted.

It is not the case of a mere offer to prove an unexpressed mental purpose, without which a contract would not have been made, and authorities on that subject are not controlling. . The question at issue was whether the plaintiff was induced to sign an important paper by means of a falsehood actually asserted by the opposite party, and which, if believed to be true, might, or did, influence him to execute the paper in question.   In such a case the belief of the plaintiff in the truth of the assertion is itself a fact material to the inquiry. He had a right to believe the truth of the assertion, and if he did believe it, and acted upon that belief to his own detriment, he is certainly entitled to prove his belief as he would prove any other fact material to the determination of the

[Siebeneck v. The Anchor Savings Bank.]

question whether he was imposed upon or not. Without such belief the false assertion would not have deceived him. So far as the professional advice is concerned it would merely constitute a reason for his conviction that he was bound by the decision of the engineer, but it is the fact of such conviction, and not the reason for it, that is of importance. It is therefore not material to prove that the professional advice was given.

We do not think the state of the plaintiff's finances was material to the question of imposition, and do not sustain the eighth assignment. We do not regard the evidence stricken out as adequate proof of duress. The ninth assignment is sustained for the reasons already stated.

Judgment reversed, and venire de novo awarded.