## JULIA A. JACQUES v. FERD. FOURTHMAN.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF FRANKLIN COUNTY.

Argued June 2, 1890—Decided October 6, 1890.

1. A peremptory nonsuit is in the nature of a judgment for the defendant on demurrer to evidence; and, if there is any evidence, more than a mere scintilla, which would justify an inference of the disputed fact upon which the plaintiff's right to recover depends, it must be submitted to the jury: Hill v. Trust Co., 108 Pa. 1.

2. When the plaintiff claimed property in notes as a gift from her deceased brother, and proved her possession of them immediately after his death, with evidence of acts and declarations of the deceased in his lifetime, and other circumstances, appropriate to a gift of them, as alleged, it was error to refuse to submit the question of fact to the determination of the jury.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, Mc-COLLUM and MITCHELL, JJ.

No. 4 May Term 1890, Sup. Ct.; court below, No. 238. September Term 1887, C. P.

On July 9, 1887, Julia A. Jacques brought assumpsit against Ferdinand Fourthman, by her statement of claim filed averring that on June 7, 1886, she was the owner of a large number of notes and obligations for the payment of money, scheduled in the statement, which notes, etc., had been the property of John Gehr, the plaintiff's brother, but "transferred and delivered" by him to the plaintiff; that the plaintiff on said date, at the request of the defendant, had delivered them to the latter to collect the sums due thereon for and on her account, and that the defendant had collected the same with the interest, in all about $3,000, no part of which he had paid over to her. The defendant pleaded non-assumpsit and payment with leave.

At the trial on September 11, 1888, testimony was introduced on the part of the plaintiff tending to show that she was the only sister of John Gehr, deceased, who died on January 3, 1886, without a family or brothers; that the plaintiff had lived with him for several years and was his housekeeper, and

before his death he had given her the notes scheduled in her statement of claim ; that, three or four days after his decease, the defendant, who was the executor of her brother's will, had called upon the plaintiff and she had given him the notes, etc., stating to him that they were her own, to the end that he might collect them for her account, and that the defendant received them to collect as the plaintiff's.   The testimony is sufficiently shown in the opinion of the court.

At the close of the plaintiff's case, the court, ROWE, P. J., on motion, entered a judgment of compulsory nonsuit, on the ground that the plaintiff's testimony was insufficient to establish her title to the notes, etc., that she was bound to prove the gift of the notes to her, and that in this she failed.   A rule to show cause why the judgment of nonsuit should not be taken off having been refused, under exception, the plaintiff took this appeal, assigning the orders entering the judgment and refusing to take it off, for error.

*Mr. Alexander Stewart* (with him *Mr. H. Gehr* and *Mr. W. U. Brewer*), for the appellant.

*Mr. W. Rush Gillan* (with him *Mr. W. T. Omwake*), for the appellee.

OPINION, MR. JUSTICE GREEN :

The court below having granted a compulsory nonsuit and refused to take it off, the evidence given by the plaintiff must be taken to be true, together with every inference of fact which the jury might lawfully draw from it: Miller v. Bealer, 100 Pa. 585 ; McGrann v. Railroad Co., 111 Pa. 171 ; Jones v. Bland, 116 Pa. 190.   A peremptory nonsuit is in the nature of a judgment for defendant on demurrer to evidence, and if there is any evidence, no matter how slight if it is more than a mere scintilla, which alone would justify an inference of the disputed facts on which the plaintiff's right to recover depends, it must be submitted to the jury : Hill v. Trust Co., 108 Pa. 1.

As between the plaintiff and the defendant, the latter was in no condition to deny his prima facie obligation to pay to her the money he collected on the notes in question.   He received the notes from her, with the declaration ·by her that they be-

Opinion of the Court.

longed to her and had been given to her by her brother; and, further, it was testified that he agreed to collect them for her. He thus assumed the position of her agent for the collection of the notes. Had he not been willing to take that position, he should have declined to receive them in that way, and demanded them in his capacity as executor. Inasmuch as he was executor of the will of the decedent, he might still show that she had no title to the notes, and retain the proceeds to be distributed in accordance with the will of the testator, and this would be a good defence. But he gave no testimony on that subject, and, for the purposes of the case in its present position, that question rests upon the plaintiff's testimony alone. If that evidence was not sufficient to raise a question of fact for the consideration of the jury, the nonsuit was properly granted and should not be disturbed.

That the question was one of fact, of course, must be conceded. The plaintiff, in support of her claim, proved that she had the notes in her possession and custody, together with a list of all the notes in the handwriting of her brother, from immediately after the death of her brother until they were delivered to the defendant, and that she had them locked up in her bureau drawer. She also proved by her daughter, Sallie, that the deceased occupied the back bedroom down-stairs, in the latter part of his illness, and that the bureau in which her mother kept the notes was up-stairs, and that they were there when the testator died. She further testified that, a few weeks before his death, she and her mother and Joseph Haines being in the bedroom of the testator, she saw the testator give the notes to her mother, with the direction to put them away where she got them. She also testified that on another occasion, about a week before his death, and in the sitting-room adjoining the bedroom, her mother and Joseph Haines being present, he told her mother "to go and get the notes I gave you. Q. What did your mother do? A. She went up stairs and got the notes. Q. What did she do with them? A. She brought them down and handed them to him. Q. How were they,—in a package? A. Yes, sir; with a string tied around them. He looked over a few of the notes, handed them back to her, and told her to go and put them where she kept them. Q. Were they tied up when he handed them back to her? A. Yes, sir. Q. Anything

said about any of them being due?· A. Yes, sir.   Q. What
was it.   A. He said some of them were due, but it made no
difference about it.   Q. Well, do you remember anything else
that was said or done there?   What did your mother do with
them?   A. She took them up stairs and put them away.
Q. Did your uncle keep any of his papers up-stairs?   A. No,
sir.   Q. Had he any secretary or bureau up there?   A. No, sir;
his secretary was down in the sitting-room."   It seems to us that
a jury would be justified in inferring from this testimony that
the notes were not kept in the decedent's secretary, and were
kept by the plaintiff in some place up-stairs of which she had
control, and that this was with the knowledge and consent of
the decedent.

Joseph Haines testified that, on Thursday before testator's
death, he and Sallie Jacques, and the plaintiff and the dece-
dent, were in the sitting-room together, and that the following
took place: "Q. What was the conversation?   Now give it to
us just as it occurred.   A. He says to Mrs. Jacques,—he says:
' Julia, where are those notes I gave you?'   She went and got
them.   Q. Where did she go?   A. She went out of the room.
I am not certain where she went.   She was gone for a few
moments, and returned with the notes. . . . . Q. When she
returned did she have the notes?   A. She had the notes.   She
said: ' Perhaps some of them are due and ought to be collected.'
Q. How were they?   A. They were in a bunch tied together,
or fastened together in some manner.   Q. What did she do
with them?   A. He took them and looked over them a few
minutes.   He fumbled them and looked over them, and said,
' Here take them and keep them; I cannot look over them,'
and she took them away.   Q. What did he say?   A. 'Take them
and keep them; I cannot look over them now.'   Q. Was
anything else said?   A. Nothing else, I believe.   He asked
to go to his bed.   Q. You said something a moment ago
about being due?   A. Oh, yes; she said, when she handed
them to him, ' Perhaps some of them are due and ought to be
collected;' and he said, 'Yes, some of them are due, and past
due; but never mind that now.'   Q. What did he say when
he handed the notes back to her?   A. ' Here, take them and
keep them.'   Q. Did you see what she did with them?   A. She
took them out of the room.   I cannot answer what she did

Opinion of the Court.

with them.  Q. Did you see these notes afterwards?  A. I never did, until the next day after the funeral; the next morning.  Q. Where did you see them then?  A. Mrs. Jacques had them in her possession up-stairs."  The same witness was asked as to another remark made by the decedent: "Q. What is that?  A. One remark, he had regretted that he had not left her any more, and said 'I have left her other property, so she will not want any more.'  Q. In his will?  A. Yes, sir; he said, 'I have left her other property.'  Q. When was that conversation?  A. On the Friday evening before his death, and on the following Sunday morning he died.  Q. How did that conversation come about?  By the court: We have that conversation given by you?  A. Yes.  By the court: The expression you wish to add is what?  A. That he left other property to keep her from want,—to provide for her.  He expressed this.  He regretted that he had not left her at least half of it, anyhow."

The whole of this testimony is verbal.  It relates to acts and declarations of the decedent with reference to certain notes which it is claimed are the notes for the proceeds of which, in the hands of the defendant, this suit is brought.  The question at issue is a question of fact exclusively for the jury.  The meaning of the words used by the decedent is for the jury and not for the court.  What did the decedent mean when he said " Julia, where are those notes I gave you?"  Did he mean that he had given them to the plaintiff?  Certainly, the court cannot say, as a matter of law, that he did not.  The word used was entirely appropriate to express the fact of a gift.  The actual meaning of the declarant must be determined by the jury, and if they decided that a gift was meant, could they not lawfully do so?  Would such a meaning be an absolutely illegitimate inference?  We cannot say so.  Again, when he said to the plaintiff, as he handed her back the notes, " Take them and keep them," what was his meaning?  Only a jury can decide.  It is their exclusive function.  Can a court say, as matter of law, that he did not mean that she should keep them literally, and as her own?  She had them in her possession.  They were restored to her possession, accompanied with the declaration that she should take them and keep them.  It must not be forgotten that she was his only sister; that he had

no brothers; that he had never been married, and that he was about to die, and the subject matter of the transaction was a pure gift. There was no necessity for her to prove a consideration. No rights of creditors appear in the case. To a witness he regretted that he had not given her more by his will. In such circumstances, is it an unlawful inference, which a jury may not draw, that the decedent intended to give his sister, who was also his housekeeper and his nurse, the notes in question? Certainly not. We do not think that a court is at liberty to withdraw such a question, and such testimony, from the consideration of a jury. We are therefore of the opinion that it was error to order a nonsuit, and must reverse the judgment for that reason.

Judgment reversed, and procedendo awarded.