|143 473<br>|151 149<br>| 143　　473<br>23 SC　329

# WEST PHILA. N. BANK v. JOHN FIELD.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS NO. 4 OF PHILADELPHIA COUNTY.

Argued April 3, 1891—Decided October 5, 1891.

1. The surrender to an indorser of a note having the defendant's genuine signature thereto as maker, on the receipt of a note with the signature of another maker forged thereto, but believed to be genuine, will not amount to a payment of the first note, or extinguish the indorsee's right of action against the maker thereof.

(*a*) In assumpsit against the defendant as the maker of a negotiable note, the plaintiff bank proved that it had discounted the note for the payee and indorser thereof, to whom on maturity it had delivered the note, on receipt of a new note for a like amount but with the name of another maker thereto, which was a forgery:

2. The plaintiff having shown, further, that the indorser to whom the note was surrendered in exchange for the note with the name of the maker forged, had fled the country on account of said forgery and others, sufficient ground was laid to excuse the non-production of the note, and to authorize secondary evidence of its contents.

3. Showing, further, that, both before and after the note in suit was surrendered to the indorser, the defendant when spoken to concerning the note, and his signature thereto, replied that the note was " all right "

Statement of Facts.

the evidence was sufficient to warrant the jury in finding that defendant's signature to the note was genuine.

4. The note having been made for the accommodation of the payee and indorser, the defendant was entitled to protection against the possibility of the note being found thereafter in the hands of an innocent holder for value. This protection, however, the court could give by restraining execution till such indemnity should be given.

Before PAXSON, C. J., STERRETT, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 199 January Term 1891, Sup. Ct.; court below, No. 94 June Term 1887, C. P. No. 4.

On June 3, 1887, the West Philadelphia National Bank brought assumpsit against John Field, filing a statement of claim to recover $5,000, the amount of a certain negotiable note drawn by the defendant to the order of John and James Hunter, dated June 25, 1886, payable four months after date, and indorsed to the plaintiff bank. The defendant pleaded non-assumpsit.

At the trial on October 10, 1890, the plaintiff bank, to lay ground for evidence of the contents of the note, not produced, proved by their cashier that he had delivered it to James Hunter, about the time of its maturity, and that within his knowledge the latter had not been in Philadelphia after some time in March, 1887. The defendant, who was the brother-in-law of James Hunter, was called for cross-examination by the plaintiff, and testified that he had not seen James Hunter since March, 1887; that about the time of Hunter's disappearance there was a common report that there were charges of forgeries to a large amount against him; that the witness was the assignee of the estates of John and James Hunter, and that it had never occurred to him to hunt James Hunter up, as he had taken it for granted he was not in Philadelphia.

As to the note sued upon, the plaintiff bank, under objection, proved by its cashier that it had originally been discounted by the plaintiff for the indorsers, John and James Hunter, and the proceeds paid to James Hunter; that when it matured, James Hunter obtained it from the plaintiff by giving in exchange for it a note for $5,200 made to the order of John and James Hunter by James Long, dated October 28, 1886, and

Opinion of the Court.

that, subsequently, the last mentioned note was renewed by a note for the same amount by the same maker, at four months, to the same payees, dated March 2, 1887. James Long testified that the said two notes were forgeries. The cashier and president of the plaintiff bank then gave testimony, sufficiently appearing in the opinion of the Supreme Court, tending to show that while the note in suit was yet in the plaintiff's possession, and after it was surrendered to James Hunter, the defendant had admitted the genuineness of his signature as the maker thereof.

At the close of the plaintiff's testimony, on motion of the defendant's counsel, the court, WILLSON, J., entered a judgment of nonsuit, with leave, etc. The grounds for making said order were not shown in the paper-books. A rule to show cause why the judgment of nonsuit should not be vacated having been subsequently argued before the court in banc, the rule was discharged, without opinion filed. Thereupon the plaintiff took this appeal, assigning the orders entering the judgment of nonsuit and discharging the rule to show cause, etc., for error.

*Mr. John G. Johnson*, for the appellant.

That it was sufficiently shown that the note was lost, and the plaintiff was entitled to recover, although execution would not be permitted until proper indemnity should be given, counsel cited: Fales v. Russell, 16 Pick. 315; Bell v. Young, 1 Gr. 175; Bisbing v. Graham, 14 Pa. 16; Bigler v. Keller, 8 W. N. 323. And that plaintiff did not lose its right to recover, because of having surrendered the note in exchange for one that was a forgery: Mount v. Scholes, 120 Ill. 394; Clift v. Moses, 112 N. Y. 426; Ritter v. Singmaster, 73 Pa. 400.

*Mr. Richard P. White* (with him *Mr. George H. Earle, Jr.,* and *Mr. Samuel B. Huey*), for the appellee.

Counsel cited: Sharswood's Byles on Bills, 381 n.; Crowe v. Clay, 9 Exch. 604; Hook v. Murdock, 28 Mo. 224; Lord v. Water Co., 135 Pa. 122.

OPINION, MR. JUSTICE STERRETT:

In the language of plaintiff's amended statement of claim, this suit was brought against the defendant John Field " to

recover the sum of $5,000, being the amount of a certain prom-
issory note drawn by the defendant to the order of John and
James Hunter, dated June 25, 1886, and payable four months
after date at Fifty-fifth and Paschall streets, and indorsed by
said John and James Hunter to the plaintiff." As an excuse
for non-possession of said note and inability to file a copy of
it, the plaintiff added the following averment, viz.:

"The said note is not now in the possession of the plaintiff,
because at its maturity James Hunter, as agent for and on be-
half of the defendant and of John and James Hunter, offered
to plaintiff in payment thereof a note for $5,200, purporting
to be drawn by James Long to the order of and indorsed by
John and James Hunter. Believing the signature of James
Long to said note [to be genuine], the plaintiff accepted said
note in payment, and delivered to James Hunter, as agent for
defendant, the said promissory note of defendant. Plaintiff
afterwards discovered, and now avers, that the signature pur-
porting to be that of James Long to the note, so offered and
received in payment, was a forgery, and consequently the said
note was void, and the plaintiff has not received from said de-
fendant, or from any other person, payment of the whole or
any part of the aforesaid promissory note of defendant."

On the trial, evidence was introduced by the plaintiff, tend-
ing to prove, inter alia, the following facts:

(a) That the note in suit was made by defendant for the
accommodation of the payees, indorsed in their names, pre-
sented to plaintiff by James Hunter, discounted by it, and the
proceeds paid to said James Hunter.

(b) When the note in suit matured it was taken up by
James Hunter, who, in lieu of it, gave plaintiff a note for
$5,200, at four months from October 28, 1886, purporting to
be made by James Long to the order of and indorsed by John
and James Hunter; and when that note matured it was in like
manner taken up by James Hunter, who, in lieu of it, gave
another note for $5,200, at four months from March 2, 1887,
purporting to be made by said Long to the order of and in-
dorsed by said John and James Hunter.

(c) The notes aforesaid, purporting to be made by James
Long, were forgeries, but at the time they were respectively
taken by the plaintiff it believed they were genuine.

(*d*) The note in suit and the first-mentioned Long note passed, in the manner and under the circumstances above stated, from the plaintiff into the possession of James Hunter, who, having been accused of having committed other forgeries at or about the same dates, fled the country, and up to and at the time of trial his whereabouts were unknown to the plaintiff, and no part of either of the above-mentioned notes has ever been paid.

We think sufficient ground was laid to excuse the non-production of the note in suit, and justify the admission of secondary evidence of its contents, etc.

The evidence tending to prove that defendant made the note consisted of his own admissions, made to the president and cashier of the plaintiff on several occasions. The latter testified, in substance, that, ten days or two weeks before the note matured, defendant came into the bank, handed him a notice which had been addressed to place of payment, etc., and asked to see the note. It was handed to him. After looking at it and turning it over he said, " That is all right." A few days afterwards, defendant and Mr. Lucas called in relation to forming a syndicate to buy up the indebtedness of John and James Hunter, etc. During the conversation, as they were about leaving, " I asked Mr. Field the question, I said : ' By the way, Mr. Field, that note that you came here and inspected, was the signature of that forged or good ? ' Mr. Field replied that that signature was all right, and that the note was all right." Dr. Hughes, president of the bank, testified that, a week or two after James Hunter fled, Mr. Lucas and defendant " came to the bank, wanting us to join in a plan to pay the debts of Mr. Hunter ; and before going out Mr. Park asked him if that note of his was all right, genuine. He replied that it was, after some hesitation." In short, the testimony was ample to warrant the jury in finding that the signature of the maker of the note in suit was genuine, and also that possession of it was fraudulently obtained by James Hunter in the manner above stated ; but the learned judge, being of opinion that the evidence was insufficient to justify a verdict in favor of plaintiff, ordered a judgment of nonsuit, and afterwards refused to take it off. In that, we think, there was error.

It is well settled that a peremptory nonsuit is in the nature

of a demurrer to the plaintiff's evidence. If there is any evidence, beyond a mere scintilla, which alone would justify an inference of the disputed facts on which his right to recover depends, it must be submitted to the jury: Hill v. Trust Co., 108 Pa. 1; Abraham v. Mitchell, 112 Pa. 230. Upon a motion to nonsuit, the defendant is considered as admitting every fact which the evidence tends to prove, including such inferences of fact as a jury may lawfully draw from it: Miller v. Bealer, 100 Pa. 585; McGrann v. Railroad Co., 111 Pa. 171; Jones v. Bland, 116 Pa. 190.

Conceding, what under the evidence can scarcely be doubted, that James Hunter procured the discounting of a genuine note, and when it matured, deceitfully and fraudulently paid, or rather pretended to pay it with a forged note, and when that matured, undertook to pay it also with a similar forged note, and then fled the country, the fair inference would be that the evidence of his criminality would not be left within plaintiff's reach. But it is only necessary to say in regard to this and other questions of fact that the evidence was quite sufficient to require its submission to the jury.

As an innocent party to the transaction the defendant is, of course, entitled to protection against the possibility of the note turning up in the hands of an innocent holder for value, but, as was held in Bisbing v. Graham, 14 Pa. 16, the court has ample power to restrain execution until such indemnity is given. In that case, it was said:

" That the defendant is entitled to indemnity, before he can be compelled to pay, I have no doubt; for it may be that the note was indorsed in blank by Graham, and is now in the hands of a holder for value. . . . . The maker ought not to encounter any risk, as he is in no default. The inconvenience, if any, is one to which the holder has exposed himself, arising, perhaps, from his own carelessness. . . . . In this, all the authorities to which I refer generally agree. But the question recurs, is the failure to indemnify in bar of the action, or, is it a prerequisite merely to the execution to enforce payment of the judgment? In the absence of all direct authority, in this state at least, I incline to the latter view of the case. However the law may be, as to suit brought to recover on a lost note, (and I see no reason why there should be any difference,)

we are of opinion that, when the note is lost after the commencement of the action, it is no objection to the rendition of judgment. Justice may be effectually administered by restraining the plaintiff from issuing his execution, without proper indemnity be given. This is an equitable power vested in the courts, which will take care to do equity, having a proper regard to all the circumstances of each case."

To the same effect is Bigler v. Keller, 8 W. N. 323.

It is unnecessary to discuss so plain a proposition as that the plaintiff bank did not lose its right to recover on the note in suit, because it was surrendered in exchange for a forged note. If authority for that be needed, it will be found in Ritter v. Singmaster, 73 Pa. 400; Mount v. Scholes, 120 Ill. 394; Clift v. Moses, 112 N. Y. 426. In the first cited case, it was held that the trial judge correctly instructed the jury that " the receiving of notes whose indorsements were forged, will not amount to a payment of a genuine note, or extinguish the right of action against the defendants as indorsers upon the first note, if the first note, drawn by Burkholder, and indorsed by defendants, bears their genuine signatures."

Further elaboration is unnecessary. For reasons suggested we think the learned court erred in not taking off the judgment of nonsuit.

Judgment reversed, and procedendo awarded.