## Siebeneck *versus* The Anchor Savings Bank.

1. Giving a definite extension of time to the maker of a note upon consideration of interest paid in advance by him without the assent of an indorser will release him from liability.

2. The burden of showing that the indorser assented to such extension of time is on the party seeking to charge him.

3. An indorser cannot be held liable if a bank upon the promise of its president to an indorser to use his influence to secure for the maker of a note forbearance or temporary indulgence on condition that the note be redeemed as fast as possible, gives to the maker definite extension of time without the assent of the indorser.

November 4th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas No. 2, of *Allegheny county:* Of October and November Term, 1885, No. 95.

Assumpsit brought by The Anchor Savings Bank against Joseph G. Siebeneck.

The plaintiff declared specially on a promissory note, dated November 14th, 1883, for $3,800, made by A. A. Jackson & Co., to the order of J. G. Siebeneck, and indorsed by said Siebeneck, and in the common counts. The defendant pleaded non assumpsit, payment, payment with leave, etc.

On the trial, before EWING, P. J., the following facts appeared: In January, 1883, A. A. Jackson applied to Siebeneck, the defendant, for pecuniary aid in his business. Siebeneck, willing to help Jackson along, executed his own promissory note for $3,000 to Jackson's order, and indorsed

another note of A. A. Jackson & Co., the name under which
Jackson was doing business, for $5,000, and gave them to
Jackson.   Jackson got these notes discounted at the Anchor
Savings Bank, and used the proceeds in the prosecution of
his business.   Siebeneck never received a dollar of the pro-
ceeds, and was merely an accommodation maker and indorsed
for the benefit of Jackson.   The note upon which Siebeneck's
name appeared as maker fell due on July 26th, 1883, and at
his request was held over by the bank a couple of weeks,
until on or about August 10th, 1883, when it was fully paid
and discharged by Siebeneck.   The other note upon which
Siebeneck's name appeared as indorser fell due November
14th, 1883, and on that day the same was lifted, the bank
receiving $1.200 in cash and a new note of A. A. Jackson &
Co., dated November 14th, 1883, at three months for $3,800,
the balance of the $5,000 to the order of Siebeneck, who
again, for the accommodation of Jackson, indorsed the same.
The names of West & Swaney appear on it as second indorser.
This note of November 14th, 1883, upon which this suit is
brought, fell due February 16th, 1884.   On that day Siebe-
neck, at Jackson's request, executed a waiver of protest in
writing, which was handed by Jackson to the cashier of the
bank.   At the time of signing the waiver of protest Siebeneck
informed Jackson that he would not renew his indorsement
for him, giving as a reason that he was settling up his affairs,
going out of business, and contemplating an extensive trip to
Europe, and was unwilling to leave such a matter unsettled
behind him.   Jackson told Siebeneck that he would get an-
other indorser, and on leaving Siebeneck, went to the Anchor
Savings Bank, delivered to the cashier the waiver of protest,
and informed him of Siebeneck's refusal to renew his indorse-
ment.   He also paid the cashier $500 on account of the note
and $44 for interest in advance, for a renewal of two months
on the balance.   On April 18th, 1884, on the expiration of
said renewal, Jackson made a further payment of $800 on
account of the principal of the note, thus reducing its
amount to $2,500 and $52.22 interest on balance, for a fur-
ther extension of three months, to wit: until July 18th, 1884.
On June 15th, 1884, Jackson & Co. failed, and on June 16th,
1884, the cashier of the bank notified Siebeneck that they
held the $3,800 note of Jackson & Co., on which he appeared
as indorser, requesting payment.

Siebeneck, who had declined to renew his indorsement on
February 16th, 1884, the day the note fell due, and had been
told by Jackson that he would get a new indorser, as soon as
he discovered the fact that the note had been renewed twice
without his knowledge or consent, after consulting his legal

adviser, declined to pay, and on July 28th, 1884, this action was brought.

On the trial of the case the cashier testified that at the time of the receipt by him of the payments on account and of the interest that he declined to grant definite renewals, telling Messrs. Jackson and West that it would have to come before the board; that the board delegated no such authority to him, but that subsequently the board granted the extensions of sixty and ninety days above mentioned.

A. M. Brown, president of the Anchor Savings Bank, testified that shortly after the maturity of the note, which happened February 16th, 1884, Siebeneck called on him at his office and asked him as an old friend to carry this note a little while; that he, Brown, refused to renew the note, telling him "that we (the bank), would not renew the note for him or anybody else, would not do it," but that he, Brown, would try to get the bank to hold it over for a few days; told Siebeneck " distinctly that we would not renew it, because I thought we had obliged him a great deal."

Counsel for the plaintiff asked: "In that conversation you agreed to get all the time you could?" and the witness answered, "Yes, sir. . . . . . I agreed to no definite extension, but only a friendly promise to oblige the parties." Brown further testified that, on his reporting this conversation to the board they, at his instance, granted the extensions of February 16th, 1884, and April 18th, 1884.

Siebeneck testified that he never had any interview with Brown; never saw him or anybody else in regard to the note, and did not know anything about the extensions until after June 16th, 1884, the day after Jackson's failure; that the note was never mentioned to him by any one until the date last mentioned, and that he supposed that Jackson & Co. had obtained another indorser, as they told him on February 16th, 1884, that they would do.

Jackson and West testified that they never informed Siebeneck of the extensions, nor spoke to him about it after February 16th until June 16th, 1884, and the cashier says he neither saw nor communicated with Siebeneck in regard to the note between those dates.

The plaintiff presented the following point:

If the jury find from the evidence that after the note fell due the defendant requested the plaintiff to give A. A. Jackson & Co., the makers, all the time it could, and that, in pursuance of said request, the extensions from February to April and April to July, 1884, were given, the plaintiff is entitled to recover. Affirmed. (First assignment of error.)

The defendant presented inter alia the following points:

1. " That under all the evidence in the case the verdict must be for the defendant."

Answer—" The first point is refused." (Second assignment of error.)

4. " That to hold a surety to his liability after an extension granted by the creditor to the principal debtor the creditor must show the surety's consent to the identical extension granted, at the time the extension was granted, or prior thereto."

Answer—" The fourth point is affirmed, but that consent may be given in a general way so as to cover repeated extensions." (Third assignment of error.)

In the general charge the court instructed the jury inter alia :

" I may say further in this connection that Mr. Siebeneck, in the absence of information to the contrary, ought to have presumed that he was liable on this note. We think it very singular that so good a business man never inquired about it afterwards. Lawyers, who know precisely their liabilities, are permitted to scold their clients and then be neglectful themselves of their own business, but the careful man Mr. Siebeneck was, under the circumstances should have seen that this note was lifted and that his name was off it. Every man who gets a note indorsed should show the note to the indorser when it is paid. Not seeing the note the safe way is for the indorser to presume that he is liable on it, and especially when he has waived protest." (Fourth assignment of error.)

" Now, if there was an agreement on the part of Major Brown, after a general request for time, and a request that all the time they could give the maker should be given, we think it was a sufficient warranty to the bank to assume Mr. Siebeneck's consent to an extension until he himself notified them not to grant it." (Fifth assignment of error.)

Verdict for the plaintiff in the sum of $2,618.75 and thereupon judgment. Whereupon the defendant took this writ, assigning for error the answer to the plaintiff's point, the answer to his first and fourth points, and so much of the general charge as is above set out.

*William R. Blair* and *S. Schoyer, Jr.*, for plaintiff in error. That an extension, granted upon the consideration of interest paid in advance, if done without the surety's knowledge or consent, will discharge the surety has lately been expressly decided in Grayson's Appeal, 16 W. N. C., 388. There was no contract between Siebeneck and the bank for an extension of time. But suppose the bank was justified in granting a definite extension of sixty days, this cannot be held to extend

to a subsequent extension: Baylies on Sureties, 290; Lime Rock Bank v. Mallett, 34 Me., 547; Dundas v. Sterling, 4 Barr, 73; Aldricks et al. v. Higgins et al., 16 S. &. R. 212; Ten Eyck v. Vanderpoel, 8 Johns. 120; Anderson v. Blakely,. 2 W. & S., 237.

*Marshall Brown*, for defendant in error.—The fact that Siebeneck requested, and the president of the bank, without agreeing to secure any specific or definite extensions, promised to get all the time he could, thus being established, Siebeneck and the president bore the relation of principal and · agent: Furber v. Bassett, 2 Duvall (Ky.) 433. Acting upon this authority, never revoked, the president secured the extensions. The case falls within the principles enunciated in Grayson's Appeal, 16 W. N. C. 388. It was there held that a surety upon a note, not giving his assent to a legal extension, is discharged. In the present case Siebeneck requested the time.

Touching the prepayment of interest, the court says: (Grayson's Appeal, 16 W. N. C. 388), "Although payment of interest in advance is the strongest circumstance showing a renewed credit, it does not necessarily tie the hands of a creditor; if the interest is paid in accordance with a regular usage known to the parties, and acquiesced in by them, for a continuance of the loan, or, if the right to sue is reserved, the surety cannot complain."

The argument and citations of plaintiff in error are not applicable to the present case. Mr. Siebeneck does not stand in the position of a mere guarantor. He was absolutely fixed for the debt upon the dishonor of the note at its maturity. Being absolutely liable for the debt and confessedly unable to pay it, he sought his creditor and begged for time, all he could get. Acting upon this request the bank gave the time prayed for; and upon every principle of fair dealing and honesty he is estopped from setting up as a defence the very act which he induced and procured to be done for his own relief.

· Mr. Justice STERRETT delivered the opinion of the court, January 4th, 1886.

It must be conceded that, as indorser of the note in suit, plaintiff in error is liable for the balance due thereon, unless he was released therefrom by agreement of the bank with the makers for a definite extension of time, first for sixty days and then for the further period of ninety days. As to the fact of such agreement there can be no question. It is conclusively shown by the indorsements on the note itself, and

also by the oral testimony.   The note for $3,800, made by A. A. Jackson & Co. and indorsed by plaintiff in error, matured February 16th, 1884.   On that day a waiver of protest, signed by plaintiff in error as indorser, was delivered to the cashier, to whom the makers then paid $544, which was subsequently credited by indorsing on the note, in the handwriting of the cashier, as follows :   "Received on account of the within note five hundred dollars, and interest paid on the balance, thirty-three hundred dollars, for sixty days, this 26th day of February, 1884."   On April 18th, when the sixty days' extension expired, they paid the further sum of $852.22, which is also acknowledged by indorsement on the note, in same handwriting, as follows :   "Received on account eight hundred dollars ; also interest for ninety days paid to this date."   The undisputed testimony is that the sums specified in these indorsements were on account of principal, and that $44 interest was paid for the first and $52.22 for the second extension, and were so applied with the knowledge and consent of the board of directors.   If this was done on either occasion without the assent of plaintiff in error he was undoubtedly released from liability as indorser, and the burden of showing such assent was on the bank.   In affirming defendant's second, third and fourth points, the learned president of the Common Pleas recognized the correctness of this proposition, but he appears to have thought there was testimony from which the jury might infer the indorser's assent to both extensions.   In this we think there was error.   There is nothing in the testimony of plaintiff in error, nor in that of the cashier, from which the assent of the former to a definite extension of time to the makers of the note could reasonably be inferred.   The only testimony on which plaintiff below appears to have relied is that of its president.   He testified, in substance, that shortly after maturity of the note plaintiff in error called on him, as an old friend, and requested that the bank should carry the dishonored note, to which he replied, " that we would not renew the note for him, or anybody else ; would not do it ; would not take the risk of a renewal, but that possibly the bank would be able to carry it for a few days, and if it was possible to carry it a week or ten days I would do the best I could, with the understanding that it was to be reduced as fast as they could reduce it." Again he says, " I agreed to no definite extension, but only a friendly promise to oblige the parties."   On cross-examination he testified :   " I told him very distinctly we would not renew it for him, because, as I say, we had obliged him more than I thought he was entitled to." . . . . . " After some little conversation in which I told him the directors wanted the

[Oxnard v. Varnum.]

money, although we were not hard up, and that possibly we could oblige them a little while, and told him I would go and see the cashier and directors, if necessary, and prevent them from being harassed about the note ; but, with this condition, that we would not make any positive or definite extension of time ; simply indulge them as long as we could, the interest to be paid up."

There is nothing in the foregoing, nor in any other portion of the testimony, to warrant any other inference than that the president of the bank would use his influence to secure for the makers of the note a mere forbearance or temporary indulgence, on condition that they would reduce the note as fast as they could, but that in no event would a definite extension of time be granted.  There was nothing said or done during the interview with plaintiff in error to even suggest that anything more than a temporary indulgence would be extended to the makers.  Indeed he was distinctly informed that the note would not be renewed, nor " any positive or definite extension of time " be granted.  We find nothing in the testimony that can be regarded as sufficient to rebut the at least *prima facie* defence made out by the indorsements on the note.  The import of these indorsements cannot be misunderstood.  They clearly show that two definite extensions of time were successively granted to the makers, for which they paid, in advance, more than the legal rate of interest. Under that evidence neither the bank nor the indorser, if he had taken up the note, could have maintained an action thereon against the makers until the expiration of the respective periods for which the time of payment was extended.

It was unnecessary for the court to charge as complained of in the fourth specification.  The remarks of the learned judge were calculated to unduly prejudice the plaintiff's case.

The first, second and fifth specifications of error are sustained.

Judgment reversed.