## Second National Bank of Reading, Appellant, *v.* Wentzel.

[Marked to be reported.]

*Promissory notes—Payment—Forged note.*

An attempted renewal of a promissory note by giving in lieu of it a forged note, is not a payment of the first note which will discharge the liability of the maker.

*Evidence—Handwriting.*

Where a witness has testified that he saw a signature of the defendant, which the defendant admitted to be genuine, he will be permitted to give his opinion as to the genuineness of the signature of the defendant upon a promissory note in suit.

*Forged note—Admissions—Estoppel.*

Where a person is shown a promissory note held by a bank, and admits that his signature as maker thereof is genuine, although he knows at the time that it is a forgery, he will not be estopped in a suit upon the note from setting up the fact that the note was forged.

Argued March 4, 1891. Appeal, No. 328, Jan. T., 1891, by plaintiff, from judgment of C. P. Berks Co., May T., 1890, No. 86, on verdict for plaintiff, Charles S. Wentzel. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS and HEYDRICK, JJ.

Assumpsit on two promissory notes.

The facts appear by the opinion of the Supreme Court.

At the trial before ERMENTROUT, P. J., plaintiff made the following offer: Plaintiff proposes to prove by the cashier and teller of plaintiff bank that the signature which defendant admitted to be his on the note of Sept. 7, is precisely the same as is the signature on the notes of Dec. 14, 1889, and March 17, 1890, said note of Sept. 7, being lost and defendant alleging that to be a forgery, just as he alleges the two latter notes to be a forgery, for the purpose of estopping defendant from denying the signature.

Defendant objects that the testimony offered is irrelevant and incompetent because it raises a collateral issue, to wit, the genuineness of a note which is not before the jury and not in existence, as appears from the offer of plaintiff. Objection sustained and exception. [1]

Israel M. Bertolet testified as follows:

" Q. Where do you live ?  A. Oley township.  Q. Are you a director of the Second National Bank ?  A. Yes, sir.  Q. Were you in 1889 ?  A. Yes, sir.  Q. Do you know Charles S. Wentzel, the defendant ?  A. Yes, sir.  Q. If you recollect that in the latter part of 1889 you were requested by the board of directors to inquire of Charles S. Wentzel whether the indorsement upon a note of $650 was his or not, state whether or not you did inquire of him, and state what answer he gave you. A. I recollect it; yes, sir. The note was presented at the bank at the meeting of the board and was passed upon, was looked over by the members of the board, and, as I knew Mr. Wentzel, I was requested to see him and ask him about his indorsement on that note, which I did on the same day. Q. Where did you see him ?  A. I met him at his place of stopping at the Berks County House, about noon or a little after 12 o'clock.  Q. What was the amount of the note which you were to inquire about?  A. Six hundred and fifty dollars. Q. Made by whom and indorsed by whom ?  A. Made by William C. Keller and indorsed by Charles S. Wentzel.  Q. What did you say to Mr. Wentzel ?  A. I spoke to him about Mr. Keller, as to his standing, first; he told me he was not considered worth anything, and then I spoke to him about this note that was presented at the bank and asked him if it was all right, if he had indorsed for him.  He said he had.  He said

he had indorsed frequently or a number of times, and that it was all right. I asked him what he thought Mr. Keller did with so much money at once. He said he thought he used it in his business. Q. Did you mention the amount of the note? A. I said so large a note, $650, so much money. Q. Did you then report to the cashier what Wentzel told you? A. After Mr. Wentzel said it was all right and that he had indorsed for Mr. Keller—shortly after that, I do not know how long—I went to the bank and said it was all right. Q. The same day? A. The same day; yes, sir. Q. When was this? How do you fix the date? A. This was the same day the note was presented at the bank for discount; I fix upon that day, which was September 7; that was the time it was presented."

By the Court: "Q. What year was that? A. 1889."

By Mr. Hiester: "Q. Do you know whether there was another $650 note at the bank discounted afterwards which was renewed partly by the $550 note? A. I do not understand your question exactly. Q. You know one $650 note was discounted on September 7? A. Yes, sir. Q. And another was discounted on December 14, which was afterwards renewed for $550. Which of the $650 notes did you inquire about, the one dated September 7 or December 14? A. September 7. Q. How do you know it was September 7 and not the note of December 14? A. I know it from the fact that I was not present at the meeting of the bank on December 14. I was present on September 7. I might say here that I will correct my former testimony as to the date. I thought I was present at the meeting of December 14, but I was not present at that time, and so I will correct the former testimony; the presentation of the note is shown by the record of the bank."

Cross-examined by Mr. Snyder: "Q. Then the note that you asked Mr. Wentzel about was paid, was it not? A. I do not know about that, whether it was paid or not. Q. It was testified here that it was the note dated September 7 that was paid when it became due? A. Yes, sir. Q. You asked him about the note that was discounted on September 7? A. Yes, sir; that was the note. Q. You never asked him about this note, $650 that was discounted on the 14th day of December? No, sir; not to my knowledge. Q. You have testified, and you have very frankly said before the arbitrators you had

asked him about this very note in suit, about the note which was renewed by the note in suit.   Before the arbitrators you were of the opinion that it was the $650 note of which the $550 note is a renewal that you had asked Mr. Wentzel about? A. Well, perhaps I did, quite likely I did.   Q. You were in error in your recollection on that point?   A. As to time. Q. And, therefore, you say now that you never spoke to Mr. Wentzel about any of the notes in suit here?   A. Not afterwards, no; only about this note.   Q. You never spoke about the notes in suit, did you?   A. No, sir; never spoke to him about those.   Q. What you spoke to him about was the note which was discounted on September 7, and which was paid by this second $650 note which came into the bank?   A. Very likely; I do not know anything about that."

Mr. Snyder: The defendant moves that the testimony of Mr. Israel M. Bertolet be stricken out because it related to a note not in suit and not produced as a test paper or in any other way.

Mr. Hiester: I desire to ask Mr. Charles S. Wentzel some additional questions bearing upon the same note.

Charles S. Wentzel was then recalled.   By Mr. Hiester: " Q. You have testified in your examination in chief that you owed Keller only $311.   Is that so?   A. Yes.   Q. You deny that you got from Keller the proceeds of these various notes which he had discounted as he testified?   A. Yes, sir.   Q. Did you not get from Keller the proceeds of the $650 note which was discounted by the Second National Bank on Sept. 7? A. No.   Q. Did you indorse that note?   A. No."

The Court: It appearing that there was some confusion in the testimony of Mr. Bertolet as to the date of the note testified about, this motion is now entertained and his evidence is stricken out as irrelevant.   The jury will disregard that testimony.   Exception. [2]

Plaintiff made the following offer in rebuttal: " Defendant having testified that the notes in suit were not signed by him, and that along with a number of other notes in other banks were forgeries, and that he received none of the money derived therefrom, and that he owed Keller only $311, which is directly contradictory of the testimony of Keller, who has testified that the proceeds of these various notes were paid to Wentzel from

time to time, and defendant having testified, partly, that he made no contradictory statements to that effect to Israel M. Bertolet concerning one of these notes, plaintiff offers the testimony of Israel M. Bertolet to such an interview with defendant for the purpose of contradicting defendant and to corroborate the testimony of Keller to the effect that those various notes were indorsed by Wentzel, discounted with his approval, and the proceeds paid to him.

Defendant objects that the testimony offered would raise a collateral issue; it would not tend to accomplish the purpose for which it is offered; it is irrelevant and incompetent.

The Court: It being admitted the testimony is not concerning any of the notes mentioned in the statement filed in this case, but concerning a note which was paid at maturity, and for the further reason that the cross-examination of the defendant was concerning an irrelevant matter, and that his answers, therefore, could not be contradicted, the objection is sustained. Exception. [3]·

Plaintiff's point was as follows among others:

" 2. As the defendant acknowledges that he admitted to the officers of the bank the indorsement on the $650 note which was renewed by the note for $550, and that he made such admission before said $650 note matured, in any view of the case $550 of that debt remains unpaid, and the bank is entitled to recover therefor. *Answer:* That point we cannot affirm. If that note of $650 was in fact a forgery, his declaration made at the bank that it was genuine would not estop or prevent the defendant from coming here and saying that it was a forgery. The bank had parted with no money upon the strength of his declarations. The money had been obtained from the bank before that alleged interview with this defendant, and if the jury are satisfied that the $650 note was in fact a forgery, his declarations made at the bank will not stand in the way. It is evidence simply for the consideration of the jury as to the genuine character of the note in question." [4]

Defendant's point was as follows, among others:

" 2. Even if the jury believe the evidence of John M. Bertolet and F. H. Roland that defendant admitted to them that he had signed the $650 note dated Dec. 14, 1889, they cannot find a verdict in favor of plaintiffs for the $550 note unless

they believe that defendant, Charles S. Wentzel, signed and indorsed said note for $550. *Answer:* I have already substantially answered this point, but I will answer it again in this connection. If the jury find that the $550 note was a forgery, there can be no recovery by reason of that note; if the jury find that the $650 note was a forgery, there can be no recovery by reason of that note; if the jury find that the $650 note was genuine, then there can be a recovery, notwithstanding they should find that the $550 note was a forgery." [5]

Verdict and judgment for plaintiff for $211.87. Plaintiff appealed.

*Errors assigned* were (1–3) rulings on evidence, quoting the bills of exceptions and evidences; (4, 5) answers to points as above, quoting points and answers.

*Isaac Hiester,* for appellant.—The bank was justified in relying on the assurance of the defendant that his signature to the first note was genuine. Evidence to establish the similarity of the signature on the second note to that on the first should have been admitted. The case is not ruled by Cohen v. Teller, 93 Pa. 123. That was the case of the holder of a forged note seeking to hold the maker because he had paid other forgeries of a similar character. But this is the case of a bank asking a person for information concerning his unfamiliar signature, and induced by express mis-statements to accept that signature in subsequent transactions.

When the defendant admitted that the forged note was genuine, he then and there assumed the risk of paying the note, and adopted the responsibility of paying it, if Keller did not pay it. This was clearly an estoppel. The bank was thereby prevented from taking swift proceedings to recover back its money from Keller, and was misled into accepting the forged notes for $550.

One who without mistake informs a bona fide holder of a negotiable paper that his signature is genuine, is conclusively estopped from pleading that it is a forgery. 2 Herman on Estoppel, §§ 998, 1007; 2 Daniel on Negotiable Instruments, § 1351; 3 Randolph on Commercial Paper, § 1775; Wellington v. Jackson, 121 Mass. 159.

*Jefferson Snyder, David Levan* with him, for appellee.—
There was no possible way of establishing any similarity be-
tween the note of Sept. 7 and the notes in suit.   The evidence
as to this note was therefore properly rejected.   Comparison
must be made by the jury, not the witness : Berryhill v. Kirch-
ner, 96 Pa. 492; Lodge v. Phipher, 11 S. & R. 333 ; Travis v.
Brown, 43 Pa. 17.   The admissions made to the bank officers
by the defendant, were not sufficient to estop the defendant
from alleging the forgery of his name on the notes in suit.
The bank was in no way injured, and its position was not
altered.   There was therefore no estoppel: Herman, Estoppel,
§§ 991, 996 ; Weaver v. Lynch, 25 Pa. 451.

When the indorsement of a note is forged, such indorsement
cannot be ratified by the person whose name is forged, as the
act is criminal and against public policy : McHugh v. Schuyl-
kill Co., 67 Pa. 386 ; Shisler v. Vandike, 92 Pa. 447.   The case
of the appellant is not as good as that of the plaintiff in Cohen
v. Keller, 93 Pa. 123.

OPINION BY MR. JUSTICE STERRETT, October 3, 1892.

As set forth in its statement filed, the plaintiff's claim con-
sists of two items ; the first of which is for $200 with interest
from March 28, 1890, and is based on the following facts :  On
November 23, 1889, the plaintiff bank discounted for Wm. C.
Keller a note made by defendant to the order of and indorsed
by said Keller for $200, at sixty days from said last mentioned
date.   When that note matured, January 25, 1890, it was tak-
en up by Keller who gave the bank in lieu thereof, a note of
same time and amount, made and indorsed by same parties re-
spectively.   When that renewal note matured, it was duly pro-
tested for non-payment and notice thereof was given to Keller
the indorser.

The second item of claim is for $550, with interest from
April 19, 1890, and is based on the following facts: On De-
cember 14, 1889, the bank discounted for said Keller a note of
$650, made by him to the order of and indorsed by defendant
at ninety days from said last mentioned date.   This note, as
well as the next hereinafter mentioned note, has upon the low-
er left face corner thereof the words, " Credit the drawer,"
" Charles S. Wentzel," indicating that the indorsement was

for the accommodation of the maker. When this note matured, March 17, 1890, plaintiff bank surrendered it to Keller, receiving from him in lieu thereof $100 cash and a note for $550, at thirty days, made and indorsed by same parties. When this $550 renewal note matured, it was duly protested for non-payment, and notice thereof was given to defendant as indorser.

It will be observed that the first item of claim, $200, etc., is against defendant as *maker* of the note for that sum, while the second item of claim, $550, etc., is against him as *indorser* of the $550 note protested for non-payment, etc.

As to the first item of claim, the genuineness of the first mentioned $200 note was admitted by defendant, but he testified that his name as maker of the second or renewal note for $200 was a forgery. Assuming this to be true, it could not be doubted that Keller's attempted renewal of the first note, by giving in lieu of it a forged note, was not payment of the first, and did not discharge defendant's liability as maker of said note. That principle is well settled in Ritter v. Singmaster, 73 Pa. 400 ; West Phila. Bank v. Field, 143 Pa. 473. Defendant's liability, as maker of the first note, was virtually conceded, and there was accordingly a verdict in plaintiff's favor for $211.87, the amount of said note, with interest.

Defendant's liability on the $650 note or the $550 renewal note was the main subject of contention in the court below, as it is here. It was claimed by the bank, that, as indorser of the $550 renewal note, duly protested for non-payment, etc., defendant was liable for the amount thereof with interest from April 19, 1890, the maturity thereof. Evidence was introduced, tending to prove that both $200 notes were made by defendant and that he indorsed the others. Keller, by whom the notes were negotiated, testified in substance that the names of both the maker and indorser of all the above mentioned notes, as well as others referred to in the testimony, were genuine signatures.

John M. Bertolet, the teller, and Frederick A. Rowland, cashier of the bank, were examined, and both testified, in substance, that after the $200 and $650 notes came into the bank's possession they were shown to defendant, in their presence, and after examining them he admitted that his signatures as maker of the former and indorser of the latter were respec-

tively genuine.    Mr. Bertolet was asked : " Do you recollect on one occasion that Charles S. Wentzel came into bank and your showing him this original $200 note, and a note for $650, which is not here, made by Keller and indorsed by Wentzel, and asking him whether these were his signatures?    A. Yes, sir; this seems to be the note I showed him at the time.    Q. Did you show him the $650 note at the same time?    A. Yes, sir; I think I did; positive I did.    Q. Are you positive you showed him two notes?    A. Showed him two notes.    Yes, sir; those which we had on hand at the time.    Q. The other was for that amount?    A. The other was for $650, afterwards renewed for $550.    Q. Who was the maker and indorser of that $650 note?    A. Keller was the maker and Wentzel the indorser.    Q. How did Wentzel happen to come into bank? A. I think he had a check cashed.    I knew the gentleman and called Mr. Rowland's attention to the matter.    We decided then to show him the notes.    As I spoke to Mr. Wentzel on the subject I found that he had indorsed for him and I showed the two notes to which he acknowledged his signature. Q. Did he examine them ?    A. He examined them very closely.    I gave him first the larger note, and while he was looking at that note I gave him also the $200 note.    He afterwards went to the window and examined them closely, put on his glasses to make doubly sure of it.    Q. What did he say?    A. He said after I had asked him—he spoke in German to me—he said he had written these notes, these signatures were his."

In all this, the witness was fully corroborated by the cashier, Mr. Rowland, who was present, saw what occurred and testified emphatically that defendant admitted the signatures, as maker of the one and indorser of the other note, were his.    In the words of the witness : " Mr. Wentzel examined them carefully, and in my presence, in my hearing, he answered that he had written the names."

Again referring to defendant's admissions, as to the genuineness of the signatures, etc., the notes were shown to the witness, Mr. Rowland, and he was asked to say whether he believed the signatures were in the handwriting of the defendant or not. This was objected to, and the court, refusing to sustain the objection, said : " The witness having testified that he saw the

genuine signature of the defendant, admitted by the defendant
to be genuine, he will be permitted now to give his opinion as
to the genuineness of the signature in question, based upon his
knowledge of the handwriting acquired in that form." The two
notes were then handed to the witness, and he thereupon testi-
tified : " I think they are Charles S. Wentzel's signatures."

The defendant was called as a witness, and admitted the
genuineness of his signature as maker of the first $200 note, but
he denied that he had indorsed either the $650 or the $550
note. He admitted that the $650 note was shown to and ex-
amined by him in the bank, as testified to by the cashier and
teller, that the latter asked him if he had signed it, and he be-
lieved he did not deny that he had. He also testified that he
then knew the indorsement was a forgery ; and on the witness-
stand he undertook to explain why he did not frankly say so
to the bank officers when he was asked whether the indorse-
ments were genuine or not. His conduct, in that regard, as
testified by himself, was not what it should have been.

The case was submitted to the jury on the evidence above
referred to, and other testimony including test papers contain-
ing signatures of defendant admitted to be genuine, with in-
structions to inquire and determine whether the indorsement
of either the $650 or the $550 note was genuine. The verdict
was in favor of plaintiff as to the first item of claim ; but, as to
the second, the jury must have found that the indorsements
were forged.

The plaintiff complains that the learned court erred in its
rulings on the questions of evidence referred to in the first
three specifications of error, and in its answers to the points
for charge recited in the 4th and 5th specifications. In order
that the bearing of the matters thus complained of may more
clearly appear, the main features of the evidence on which the
case was submitted to the jury have been referred to at greater
length than was perhaps necessary.

As to the rejection of the offer recited in the first specifica-
tion, we are not convinced that there was any error. As ex-
pressed in the offer itself, it was made for the specific " purpose
of estopping the defendant from denying the signature." We
are unable to see that it was competent for that purpose. If
the witnesses had such knowledge of defendant's handwriting,

from having seen and examined signatures which, in their presence he admitted to be genuine, as would have enabled them to testify to his alleged indorsement of the $550 note, it doubtless would have been received for that purpose.  In point of fact, the cashier of the bank was permitted to testify that in his opinion, based upon the knowledge he had, etc., the indorsements in question " are Charles S. Wentzel's signatures." But the mere opinion of witnesses that the signatures were his, could not have the effect of estopping the defendant from denying that they were.  Moreover, test papers, bearing signatures admitted to be his, were submitted to the jury, and it was their duty to make the comparison, and draw therefrom such inference as was warranted.

For reasons given by the learned judge himself, we think he was warranted in striking out the evidence referred to in the 2d specification, and in rejecting plaintiff's offer in rebuttal, recited in the 3d specification.

There was no error in refusing to affirm plaintiff's second point, recited in the 4th specification.  Aside from the reasons assigned by the learned judge for not affirming the point, we think it was rightly refused on other grounds.  As to the item of claim referred to, the action was against defendant as indorser.  The $650 note was not protested for non-payment; and, of course, no recovery could be had against him as indorser of that note.  Under the statement of claim filed, the bank was not entitled to a verdict for the $550 and interest, without proving to the satisfaction of the jury that the indorsement of the $550 note was made by defendant or by his authority. That note was duly protested, and the only question was whether the indorsement was genuine.  The burden of proving that it was rested on the plaintiff.

Appellant has no just reason to complain of the learned judge's answer to defendant's second point, in which he was requested to charge : " Even if the jury believe the evidence of John M. Bartolet and F. A. Rowland that the defendant admitted to them that he had signed the $650 note, dated December 14, 1889, they cannot find a verdict in favor of plaintiff for the $550 note, unless they believe that the defendant, Charles S. Wentzel, signed and indorsed said note for $550."

Instead of affirming this point, the learned judge, in con-

cluding his answer said : " If the jury find that the $650 note was genuine, then there can be a recovery, notwithstanding they should find that the $550 note was a forgery." If defendant had been the maker of the $650 note and it had been shown to be genuine, either by his admission or otherwise, the learned judge's conclusion would be correct. But it is not pretended that he was the maker of that note. On the contrary, it is averred in the statement of claim that he indorsed it, and there is no evidence that it was protested for non-payment, or that demand and notice of protest were waived by defendant.

It may be that there was a miscarriage of justice in this case, but we find nothing in the record that would warrant a reversal of the judgment. If the jury made a mistake in not finding the facts as they should have done, that is an error which we are powerless to correct.

Judgment affirmed.