# Estate of Matilda Y. Bishop, Deceased. Appeal of the Charter National Bank of Media.

*Promissory notes—Accommodation note—Indorser—Extension of time—Release of indorser.*

Where the maker of a note to the order of an accommodation indorser subsequently gives to the creditor his personal judgment note, and agrees in writing that the previous note shall be held as collateral security for the payment of the judgment note, a payment of the judgment note extinguishes the liability of the accommodation indorser. If the creditor in accepting the judgment note extends the time of payment without the knowledge of the indorser, the indorser is released.

Where the holder of a bill or note by a valid agreement based on a valuable consideration, grants an extension for a definite time to the principal, without the surety's consent, and without any reservation of his rights against the surety, unless the surety will be discharged unless he is otherwise secured.

Argued Feb. 5, 1900. Appeal, No. 221, Jan. T., 1899, by the Charter National Bank of Media, from decree of O. C. Delaware Co., dismissing exceptions to auditor's report. Before GREEN, C. J., McCOLLUM, MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ. Affirmed.

Exceptions to auditor's report.
The facts appear by the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to auditor's report.

*George E. Darlington*, with him *E. H. Hall*, for appellant.—The surety was not released by the extension given: Farmers' National Bank of West Chester v. Marshall, 9 Pa. Superior Ct. 621; Pomeroy v. Tanner, 70 N. Y. 547; Manufacturers' & Mechanics' Bank v. Bank of Penna., 7 W. & S. 335; Siebeneck v. The Anchor Savings Bank, 111 Pa. 187; Campbell v. Floyd, 153 Pa. 84; Grayson's App., 16 W. N. C. 388; Kimberly's App., 7 Atl. Rep. 75; First Nat. Bank v. Peltz, 176 Pa. 513; Smarr v. McMaster, 35 Mo. 349; Allen v. First Nat. Bank, 127 Pa. 51; Philler v. Patterson, 168 Pa. 468; Kemmerer's App., 102 Pa. 558; Hagey v. Hill, 75 Pa. 108.

*Garrett E. Smedley*, for appellee.—Giving a definite extension of time to the maker of the note upon consideration of interest paid in advance by him without the assent of the indorser will release the latter from liability: Siebeneck v. Anchor Savings Bank, 111 Pa. 187.

OPINION BY MR. CHIEF JUSTICE GREEN, February 26, 1900:
The facts found by the auditor are absolutely fatal to the claim of the appellant. There is no conflicting testimony as to what the facts were. The appellant bank held a note drawn by Nelson H. Strong to the order of Matilda Y. Bishop for $2,200,

at four months, dated November 19, 1894, falling due, and protested for nonpayment on March 22, 1895. This note was indorsed by the payee for the accommodation of the drawer, and was discounted by the appellant bank. Before the maturity of the note Mrs. Bishop died, and at the time of its maturity the bank took from the maker, Strong, a new note for the same amount dated March 22, 1895, with a warrant of attorney authorizing the entry of judgment on the note, executed by Strong alone, and payable directly to the order of the Charter National Bank, Media, Pennsylvania, for the payment of $2,200 at two months after date. This note contained the following recital: "As collateral security I have delivered note of Nelson H. Strong to Matilda Y. Bishop indorsed by her for same amount which I hereby authorize and empower the holders hereof, on default in payment at maturity, with a view to its liquidation, and of all interest and costs thereon to sell and transfer in whole or in part without any previous demand upon or notice to me either at broker's board or at public or private sale, with the right of becoming the purchaser and absolute owner thereof, free of all trusts and claims should such sale be made at broker's board, or be public." There are additional stipulations in favor of the right of the pledgee to protect itself, which are of no special importance in the present connection. At the time this judgment note was taken the interest due thereon was paid by Strong, the maker, to the bank, in advance of the maturity of the note. This note, at its maturity, was renewed, and thereafter several more renewals were made until May 1, 1897, and at each renewal Strong paid, and the bank received, the interest on the amount of the note in advance. The original note was credited with interest paid to May 1, 1897. It is manifest from the written papers thus far considered that the personal judgment note of Strong was taken for the identical debt represented by the previous note for the same amount that was indorsed by Mrs. Bishop. Also, that the bank and Strong, the maker of both notes, agreed in writing that the previous note should be held as collateral security for the payment of Strong's personal judgment note. It follows that Strong's personal judgment debt became the principal debt, and the previous obligation given by himself, and indorsed by Mrs. Bishop became, and was thereafter held, as collateral security only for the pay-

ment of the judgment debt.  If the latter debt was subsequently
paid by Strong such payment necessarily extinguished the col-
lateral obligation on which Mrs. Bishop was indorser.

The verbal testimony accords entirely with the written papers.
Thus Strong, the maker of both notes, testified, "I asked Mr.
Needles (the bank's cashier) to extend the obligation (note in-
dorsed by Mrs. Bishop) by his taking my note and keeping the
old note as collateral for my note.  I told Mr. Needles that the
bank had the old note and so was secure.  The judgment note
I gave was for the purpose of preventing the bank from pro-
ceeding against Mrs. Bishop's estate.  One of the purposes I
had in mind was to pay the note.  I did not want the estate to
lose, if possible.  I agreed to keep the interest paid on this judg-
ment note.  I agreed to pay this and did pay it, within six or
eight months."  Cross-examined: "When I gave the note to
the bank I paid the interest in advance, as I had been doing.
I paid for several months in a regular way.  I mean the inter-
est on the time notes was paid in advance as stated."  Not only
does the testimony of Mr. Needles not contradict that of Mr.
Strong but corroborates it in every particular.  Thus he testi-
fied: "I am cashier of the Charter National Bank of Media.
The Strong note indorsed by Mrs. Bishop has always been held
by the bank.  The personal note of Mr. Strong was taken by
me as cashier. . . . Was taken by me on my own responsibility.
This note was taken because we had so much past due paper,
including the note of Bishop, so that by taking this note from
Mr. Strong it kept the matter in bankable shape."  He further
testified: "There was no extension indorsed on the note of Mr.
Strong indorsed by Mrs. Bishop.  There was no agreement by
or with the representatives of Mrs. Bishop outside of Mr. Strong
to that effect.  There was no agreement with the representa-
tives of Mrs. Bishop for an extension of the Strong note.  No
representation was made to them to that effect.  All the con-
versations in regard to the matter were entirely with Mr. Strong."
He further said: "Q. Did these several notes given by Mr.
Strong represent the same debt as the note indorsed by Mrs.
Bishop?  A. Yes."  Mr. Strong, being recalled, was asked,
"Q. Was the note indorsed by Mrs. Bishop an accommodation
note?  A. It was.  Q. On whose account?  A. Mine."

Thus it appears by all the testimony in the case, without the

least contradiction, (1) that the bank, being the holder of an accommodation note of which Strong was the maker and Mrs. Bishop the indorser, accepted from Strong his individual judgment note for the same identical debt, and agreed to hold the former note indorsed by Mrs. Bishop as collateral security for the payment of the same; (2) that the bank, by accepting the individual note of Strong payable at two months after the maturity of the indorsed note, thereby extended the time of payment of the debt for the definite period of two months, and subsequently granted other extensions of definite time for the payment of the same debt for the continuous period of two years; (3) that at the time of the first extension the bank accepted payment in advance from Strong of the interest accruing for the definite extended time for the payment of the debt, and continued to accept similar definite payments of interest in advance for every renewal of the debt for two years further; (4) that the debt, the payment of which was thus extended, was the identical debt which was represented by the note which was indorsed by Mrs. Bishop; (5) the renewal was given for the very same debt, and for extending the time of payment of the same debt, for which the indorsed note was given; (6) the whole agreement for the extension of the time of payment was made by the bank with Strong, the maker, alone, and nothing was said or done in the course of the transaction by any representative of Mrs. Bishop. Neither the representatives nor the heirs of Mrs. Bishop had any notice of the extension.

It follows necessarily from this condition of things that the bank disabled itself from taking any proceedings for the collection of the debt from Strong during all the period of the renewals of Strong's notes after the maturity of the note which was indorsed by Mrs. Bishop.

Upon every principle pertaining to this subject, and upon all the authorities, the estate of Mrs. Bishop was discharged from all liability by these proceedings. There can be no controversy as to what the law is upon the undisputed facts of this case. It is concentrated in one of our recent cases which is directly applicable and controls the determination of this. In Siebeneck v. The Anchor Savings Bank, 111 Pa. 187, we held that giving a definite extension of time to the maker of a note upon

consideration of interest paid in advance by him, without the assent of an indorser, will release him from liability. Precisely these facts exist in the present case, as has been already shown. The cases cited for the appellant are not in point, because they do not involve the facts which are present on this record. As to the case of Bank v. Marshall, 9 Pa. Superior Ct. 621, so much relied upon for the appellant, a single citation from the opinion will suffice to show that it can have no application here. It is this: " There is nothing in the evidence showing an extension of time to the maker, on the notes in suit; and this cannot be implied from the fact that a note of the maker, as collateral to those in suit, was taken by the bank." The general rule upon this subject is well expressed in 2 Randolph on Commercial Paper, p. 638, thus: " Where the holder of a bill or note grants an extension for a definite time to the principal without the surety's consent, and without reservation of his rights against the surety, by a valid agreement based on a valuable consideration, he will thereby discharge the surety unless the surety is otherwise secured. The holder of commercial paper cannot give time to the acceptor or maker in such a way as to preclude himself from suing, and suspend his own remedy without discharging parties who are secondarily liable and who stand in the relation of sureties on the paper. An agreement to give the maker or acceptor indulgence for a definite period takes away this right of immediate action and prejudices and, therefore, discharges the surety."

The assignments of error are all dismissed.

Decree affirmed and appeal dismissed at the cost of the appellant.