## Moritz's Estate.

*Negotiable instruments—Promissory notes—Endorsers—Extension of time of payment—Discharge of endorser—Act of May 16, 1901, P. L. 194.*

1. A person secondarily liable as endorser on a promissory note is discharged when the time of payment is extended, or the right of enforcement is postponed, unless the endorser is a party to the agreement or unless the right of recourse is expressly reserved.

2. Where promissory notes were renewed with agreements between the maker and holder that the new notes were not accepted in payment of the old notes, and that all rights against endorsers were preserved, the liability of endorsers was not thereby discharged, even if they were not parties to the agreements, but where there were subsequent renewals without any such agreements the liability of endorsers was thereby ended as provided in the Negotiable Instruments Act of May 16, 1901, P. L. 194.

Argued Jan. 14, 1913. Appeal, No. 369, Jan. T., 1913, by Eighth National Bank of Philadelphia, from decree of O. C. Philadelphia Co., April T., 1911, No. 293, sustaining exceptions to adjudication In re Estate of Leopold Moritz, deceased. Before BROWN, MESTREZAT, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Exceptions to adjudication of GUMMEY, J.

LAMORELLE, J., filed the following opinion sustaining exceptions to the adjudication:

Whether or not the endorser of a promissory note is discharged from liability because of an agreement, made at the time of maturity, between the maker and the holder extending the time for payment is said by Mr. Justice MERCUR, in Hagey v. Hill, 75 Pa. 108, 111, never to have been previously decided by the Supreme Court.

In that case, Matlack & Son had made a note to the

order of Hagey in the sum of $10,000, payable eight months after date, and Hagey in due course endorsed it. At the time the note matured, it was in the possession of Hill. By writing under seal, dated July 30th, 1868, Hill acknowledged receipt of a policy of insurance on the life of one of the makers and declared therein that, in consideration thereof, he would never prosecute or demand payment of the note, provided that the premiums were promptly paid on the insurance policy, and also interest on the amount of the note, with the proviso that "no delay of demand shall interfere with any claim I may have upon the endorsers......"

These facts developed in an action of assumpsit by Hill against the endorser, and the instruction of the lower court to find for plaintiff was affirmed by the Supreme Court.

The doctrine thus enunciated in Hagey v. Hill, supra, was applied in Kemmerer's App., 102 Pa. 558. In that case, the Allentown National Bank, which had discounted a note made by Shimer and endorsed by Danner, presented its claim against the administratrix of the estate of Danner. It was shown that the note was protested after maturity, and that a written agreement had been entered into between the bank and Shimer by which it agreed to discount another note with another and a different endorser in place of the one endorsed by Danner, upon the understanding that such other note, or any renewals thereof or substitutions, should not be considered as payment. The agreement further provided that the transaction should not be considered as a release of the endorser, and the right was reserved to the bank to proceed to the collection of the money due on the original note as fully and effectively as if the additional notes, renewals and substitutions had not been made. The auditor allowed the claim, and the decree of the Orphans' Court, dismissing exceptions to his report, was affirmed by the Supreme Court.

In the present case, the auditing judge, upon the

authority of these two cases, held the estate liable, and his rulings are now before us on exceptions.

Briefly stated, the undisputed facts are: That Berlizheimer made three notes, two for $10,000 each and one for $4,000, to the order of Moritz; that Moritz was the first endorser and Standard Hosiery Company the second; that the Eighth National discounted the notes for Standard Hosiery Company; that the notes all matured after Moritz's death; that they were protested for nonpayment; that, as the notes fell due or were about to become due, written agreements under seal were made between Berlizheimer, Standard Hosiery Company and the bank by which new notes for the same amounts and for similar periods, to wit, four months each, were made by Berlizheimer (who was president and treasurer of the hosiery company), endorsed by Standard Hosiery Company, and discounted by the bank, the proceeds from the discount being used to take up the matured paper; that the estate of Moritz was no party to any of these three agreements and had no notice thereof, and that each of the written agreements provided in terms that the acceptance in each case of the respective note and the delay of demand for payment of the note due on the respective date named should in no wise interfere with any claim the bank had upon the endorser of the respective note, so to be renewed, and the right of the endorser to pay the original note was also preserved.

Whether the acceptance of the new note operates as payment is a question of fact, which in the Common Pleas would be for the jury, and in this court is for the auditing judge, and his finding, in the absence of clear error, is conclusive: see Kelly's Est., 12 Pa. D. R. 718. In this case, no conclusion other than that the acceptance was not payment was possible, for the written agreements themselves showed that payment was not intended, and the bank's bookkeeping methods are to be viewed in the light of the admitted writings.

The legal effect of the second and continued extensions

of time, however, were apparently not discussed before, and therefore not considered by the auditing judge; and the determination of this phase of the question is attended with difficulties.

In each case, the written agreement related to the one note endorsed by Moritz then maturing, and provision was made for the taking of a new note in place and stead thereof, but the agreement was silent as to any subsequent renewal of the note thus about to be taken. In this respect, the agreement differs from those under consideration in the two quoted cases. Renewal and substitution were in terms provided for in Appeal of Kammerer, and the substituted security in Hagey v. Hill endured for life, contingent upon payment of premiums and of interest.

Thus, in the case at bar, when, on July 16th, 1910, August 16th, 1910, and August 23d, 1910, the new notes without the endorsement of the administratrix of the estate of Leopold Moritz matured, new notes in like amounts, respectively, for some further period of time were substituted, without any written agreement at all, without the knowledge and consent of the representative of the first endorser, and, of course, without any reservations such as were specifically set forth in the former agreements.

Under such conditions, does the Moritz estate continue liable?

A person secondarily liable is discharged when the time of payment is extended, or the right of enforcement is postponed, unless the endorser is a party to the agreement or unless the right of recourse is expressly reserved: Act of May 16, 1901, entitled an Act relating to Negotiable Instruments, Article VIII (P. L. 210).

"Ever since Mr. Richard Buck's case," says Lord ELDON, in Ex parte Glendinning, 1 Buck B. C. 517, "the law has been clearly settled, and is now perfectly understood, that unless the creditor reserves his remedies, he discharges the surety by compounding with the princi-

pal, and the reservation must be upon the face of the instrument by which the parties make the compromise; for evidence cannot be admitted to vary or explain the effect of the instrument." His language is quoted with approval in Hagey v. Hill, supra.

It is evident from an examination of the three written agreements offered in evidence that each of them was intended to cover, and did in terms refer to, the taking in each case of the one new and substituted note, and that no provision was made for any renewal thereof. It is further shown that when and as further notes were accepted, no further written agreements were executed.

In short, had no notice been given, no consent had, or no reservation made, the endorser would have been exonerated. Where, therefore, a renewal note was taken for a definite period of time by virtue of a written agreement wherein the rights of the endorser were preserved, and where, at the expiration of that time, another renewal, and again another, was made without written agreement and with nothing stated as to the right of recourse against the first endorser, it is a fair conclusion that the holder looked to the maker and the second endorser alone, and purposed releasing the estate of the first endorser from all further responsibility.

The exceptions are sustained.

The Eighth National Bank of Philadelphia appealed.

*Error assigned* was the decree of the court sustaining the exceptions.

*E. O. Michener,* for appellant.—The liability of the endorser having become fixed, an agreement between the maker and the holder which expressly reserves the rights of the holder against the endorser and of the endorser against the maker in no wise prejudices the endorser: Hagey v. Hill, 75 Pa. 108; Kemmerer's App., 102 Pa. 558; Wyke v. Rogers, 1 De G. M. & G. 408.

A defense which was not raised at the audit and upon which no evidence was given should not be permitted to be set up in appeal: Weber's Est., 13 York Leg. Rec. 66; Jetter's Est., 14 Philadelphia 319; Young's Est., 7 Pa. C. C. R. 287; Lowry's Est., 18 Pa. C. C. R. 591; Clark's Est., 20 Pa. C. C. R. 439; Welch v. Miller, 210 Pa. 204; Carpenter v. Lancaster, 212 Pa. 581; McMillin Printing Co. v. R. R. Co., 216 Pa. 504.

The burden of proof is on the endorser to show such an agreement between the holder and maker as would discharge him: Shaffstall v. McDaniel, 152 Pa. 598; Snively v. Fisher, 21 Pa. Superior Ct. 56; Bank v. Fulton, 1 W. N. C. 110.

There is no presumption arising from the mere acceptance of a collateral note by the holder that there was an extension of time given the maker: Farmers' Nat. Bank v. Marshall, 9 Pa. Superior Ct. 621; Dougherty v. Bash, 167 Pa. 429; McCartney v. Kipp, 171 Pa. 644; National Park Bank v. Koehler, 121 N. Y. Supp. 640.

There is a presumption that the holder in accepting renewal notes of the notes given under the written agreements, accepted the renewals under the same terms, there being no evidence that any new agreement was made: Harvey v. Gunzberg, 148 Pa. 294; Laguerenne v. Dougherty, 35 Pa. 45; Hemphill v. Flynn, 2 Pa. 144; Good Intent Stage Co. v. Hartzell, 22 Pa. 277; Wallace v. Floyd, 29 Pa. 184; Ranck v. Albright, 36 Pa. 367.

*John G. Johnson,* with him *Wm. A. Hayes,* for appellee.—It is a well recognized rule that a definite and binding agreement between the holder and maker of commercial papers extending the time of payment will discharge a surety thereon, unless he consents to the extension: Calvert v. Good, 95 Pa. 65; Henderson v. Ardley, 36 Pa. 449; Siebeneck v. Sav. Bank, 111 Pa. 187; Bishop's Est., 195 Pa. 85.

PER CURIAM, February 24, 1913:

The undisputed facts in this case appear in the opinion of the court below, sustaining the exceptions to the adjudication of the auditing judge, and on that opinion the decree is affirmed at appellant's costs.