In Re: Estate of Agnes Marie Uhlig.

Argued April 18, 1933.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*Edward P. Doran,* and with him *Wm. M. Kahano-witz,* for appellant, cited: Moritz's Estate, 239 Pa. 375; Yubas v. Makransky, 300 Pa. 507.

*Scott Fink,* and with him *R. T. Jennings, Jr.,* for appellee.—The taking of the renewal notes, which were forgeries, did not extinguish the liability on original genuine notes: Womelsdorf Union Bank v. Royer, 87 Pa. Superior Ct. 181; Second National Bank v. Went-zel, 151 Pa. 142; Ritter v. Singmaster, 73 Pa. 400.

OPINION BY BALDRIGE, J., July 14, 1933:

This controversy arose over the distribution of a balance in the hands of Hugo Uhlig and Fred R. Uhlig, executors of Agnes Marie Uhlig.

Four claims based on judgment notes were presented, and the learned court below awarded each its pro rata share of the balance for distribution. The first note was dated April 23, 1928, in the principal sum of $400; the second note was dated June 7, 1928, in the principal sum of $1,000; the third note was dated June 20, 1928, in the principal sum of $500; and the fourth note was dated June 23, 1928, in the principal sum of $1,000. These notes were payable to the Citizens National Bank, of Irwin, which assigned them, with the exception of the $500 note, to the First National Bank, of Irwin. They were all executed by O. C. Uhlig and Mary Uhlig as makers, and Agnes Marie Uhlig as surety. When these respective notes fell due, a new note was given, signed by the original parties, except those falling due after the death of Agnes Marie

Uhlig, which occurred July 15, 1928. Thereafter, the names of Hugo Uhlig and Fred R. Uhlig, "Exc.," appeared on all the renewals, except the last renewal of the $1,000 note, originally dated June 23, 1928. When a renewal note was presented, the old note in each instance was marked "paid," with the date and the name of the bank, and delivered to O. C. Uhlig. These notes continued to be renewed until the early part of 1932, when it was discovered that only Hugo Uhlig's name was genuine and that the name of Fred Uhlig and "Exc.," the abbreviation for executor, had been forged by O. C. Uhlig. When this fact was ascertained, upon demand the forger returned to the banks the original notes. Forgery on a renewal note does not bar a holder from recovering upon the original note: Ritter v. Singmaster, 73 Pa. 400; West Phila. N. Bank v. Field, 143 Pa. 473, 22 A. 829; Second Natl. Bank of Reading v. Wentzel, 151 Pa. 142, 24 A. 1087; Womelsdorf Union Bank v. Royer, 87 Pa. Superior Ct. 181. The court's action, therefore, in awarding a pro rata share of the fund to the three notes was proper.

The $1,000 note, dated June 23, 1928, presents a different situation from the other three notes. The last renewal of that note was not a forged, or otherwise an impaired, instrument. When it was offered and accepted for discount, there was a new and different engagement—the time of payment was extended, and neither the deceased nor her executors was obligated: Moritz's Est., 239 Pa. 375, 86 A. 875. It·is a well recognized rule that a definite agreement between a holder and a maker of a note, extending the time of payment, will discharge a surety thereon, unless, of course, he consents to the extension: Calvert v. Good, 95 Pa. 65; Siebeneck v. Anchor Sav. Bank, 111 Pa. 187, 2 A. 485; Bishop's Est., 195 Pa. 85, 45 A. 582; Second Natl. Bank v. Graham, 246 Pa. 256, 92 A. 198.

In Citizens' Bank of Wind Gap v. Lipschitz, 296 Pa. 291, 145 A. 831, cited by appellant, the bank brought an action against Lipschitz on a note executed on June 8, 1926, which he signed and delivered, to make good an acceptance by the Triangle Silk Company, which he represented, and which was without necessary funds to pay therefor. The note fell due September 8th, when a renewal was signed and delivered by the same maker. The Triangle Silk Company executed a renewal note on December 8th, signed by the defendant as treasurer, instead of in his individual capacity, as originally. The original, however, was never surrendered. It remained in possession of the plaintiff, and upon that note the action was brought. The court held that, notwithstanding the note of September 8th was surrendered, as the bank retained the original note of June 8th, "this would raise a question of fact as to whether or not it was the intention of the bank to accept the new note in place of that executed by Lipschitz as an individual." If the original note in the case at bar had been retained, we would be confronted with an entirely different situation.

The Supreme Court clearly indicates its strict adherence to the rule heretofore stated, as it just recently said in Yubas v. Makransky, 300 Pa. 507, 150 A. 900, where a note was renewed and not signed by the original endorser: "Defendant's liability under the first note ended with its voluntary surrender and destruction and he never incurred liability under the second note for he neither endorsed nor promised to endorse it. Of course, the first note might have been kept alive despite the acceptance of the second, but it was not, and all liability thereunder was discharged by its intentional cancellation."

The acceptance of the previous forged renewal notes in substitution for the $1,000 note did not affect the validity of the last note. As we have already stated,

the bank surrendered the original note and ultimately accepted a new valid obligation to which the original surety, or her executors, was not a party, and, consequently, her estate is not bound thereby. Nor did the recovery of the original note from the forger after the acceptance of the new valid note revive the former obligation.

The order is affirmed, subject to the modification that the $1,000 note we have designated be disallowed. Costs to be paid out of the fund for distribution.